**William J. SKEPNEK, Appellant,**

*v.*

**Vernaro Ray MYNATT, Appellee.**

**No. 08–98–00437–CV.**

Court of Appeals of Texas,
El Paso.

Nov. 24, 1999.

Robert Edwin Thackston, Harold Harvey Hunter, Robert B. Gilbreath, Jenkens & Gilchrist, PC, Dallas, for Appellant.

Alan B. Rich, Baron & Budd, Dallas, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## *O P I N I O N*

RICHARD BARAJAS, Chief Justice.

This is an appeal from an order imposing sanctions in the amount of $30,000 against attorney William J. Skepnek for the filing of a false affidavit attached to a special appearance motion. For the reasons stated below, we affirm the judgment of the trial court.

## I. *SUMMARY OF THE EVIDENCE*

On July 16, 1997, William J. Skepnek, attorney for Raymark Corporation and Raymark Industries, (collectively called "Raymark"), filed a special appearance in the 34th Judicial District Court of El Paso County, Texas, challenging personal jurisdiction in the underlying asbestos law suit.

The special appearance, signed by attorney Skepnek, included the following language:

In support of the Special Appearance to Present Motion Objecting to Jurisdiction is the affidavit of James Cobb, President of Raymark, which is attached as Exhibit 'A' and incorporated by reference as if fully reproduced herein.

The attached affidavit of James Cobb ("Cobb") contained several statements that were later determined to be false. The false statements were:

1. "Raymark does not now have, and has never maintained an office in Texas."

2. "Raymark is not now licensed to do business in Texas, and has never been licensed to do business in the State of Texas."

3. "Raymark has never located any of its employees in Texas."

4. "Every statement contained in this affidavit is within my personal knowledge and is true and correct."

On August 5, 1997, after Appellant filed the special appearance, counsel for the plaintiffs in the underlying asbestos suit deposed Cobb. During the course of the deposition, Cobb was asked the following question: "Now, would it be correct, sir, that you have no personal knowledge about Raymark Industries' or Raymark Corporation's activities in the State of Texas prior to your employment there in 1994?" Cobb replied: "That's correct." The transcript of the deposition indicates that Appellant was present when the above answer was given.

Then, on August 14, 1997, the deposition of Mr. Craig Smith was taken. Smith is a 49 percent shareholder in Raymark. Smith indicated that Raybestos–Manhattan, which is the company that, in 1982, changed its name to Raymark Industries, was licensed to do business in Texas when he began working for it in 1980. Smith acknowledged that after the name change, Raymark also became authorized to do business in Texas. Smith also indicated that Raymark had a bonding or re-manufacturing operation in Dallas, sold products in Texas, and had an employee who resided in Texas. Once again, the record indicates that Appellant was present at the Smith deposition.

On September 5, 1997, plaintiffs' counsel submitted a response brief to Appellant's special appearance. In the response brief, the following assertions were made:

Indeed, Mr. Cobb's declaration that Raymark has never been licensed to do business in Texas is untrue: Raybestos–Manhattan, Raymark's undisputed predecessor, held a certificate of authority to do business in the state of Texas from March 26, 1976, until June 28, 1982; and Raymark Industries did in fact obtain a certificate of authority to do business in Texas on July 13, 1982, which it maintained in good standing until December 10, 1990.

The response brief was accompanied by a sworn statement that a copy was sent to Appellant.

Appellant then filed his reply brief asserting that "plaintiffs have not made any showing that Cobb is not qualified to make these statements, or that he lacks personal knowledge of these facts. Therefore, Raymark has adequately established that both corporations are 'non residents' of Texas."

Finally, on February 17, 1998, after the Cobb and Smith depositions revealed the false nature of the Cobb affidavit, and after the false statements were brought to Appellant's attention in the plaintiffs' response to his special appearance motion, Appellant filed yet *another* special appearance which contained the *identical* false affidavit of Cobb. Three days later, on February 20, 1998, Appellee filed his motion for sanctions.

On February 27, 1998, the trial court conducted a hearing on the motion for imposition of sanctions. After hearing arguments from both Appellant and Appellee, the trial court determined that Appel-

lant knew that the information in the Cobb affidavit was false when he filed the special appearance, and that he filed the special appearance in bad faith and for purposes of harassment. Sanctions were then levied against Appellant in the amount of $25,000 pursuant to Section 10.004(c)(2) of the Texas Civil Practice and Remedies Code, and $5,000 in attorney's fees, for a total of $30,000. Appellant brings this appeal contending that the trial court abused its discretion in levying sanctions against him for his actions.

## II. DISCUSSION

■ On review, Appellant asserts that the trial court abused its discretion in imposing sanctions. We note at the outset that "A [party] who attacks the ruling of a trial court as an abuse of discretion labors under a heavy burden." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding). The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Hallmark v. Hand,* 885 S.W.2d 471, 475 (Tex.App.—El Paso 1994, writ denied). Another way of stating the test is whether the act was arbitrary or unreasonable. *Downer,* 701 S.W.2d at 242 (citing *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984)); *Hallmark,* 885 S.W.2d at 475. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 242 (citing *Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965)). A mere error of judgment is not an abuse of discretion. *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989).

■ In Point of Error No. One, Appellant asserts that the trial court abused its discretion in levying sanctions against him because Appellee waited an unreasonable period of time before he filed his motion for sanctions and that Appellee has an improper motive. In support of this argument, Appellant notes that sanctions were not sought until "almost six months" after the Cobb and Smith depositions were taken. Appellant further argues that "[t]he timing of the motion for sanctions confirms it was filed for the purpose of exacting revenge against William Skepnek...." We disagree.

We have examined the record in the instant case and find nothing to indicate that Appellee had an improper motive for filing his motion for sanctions. Furthermore, Chapter 10 of the Texas Civil Practice and Remedies Code proscribes no time limitation for filing such a motion, nor has Appellant identified any authority which would suggest otherwise. As noted above, Appellee filed his motion for sanctions two days after Appellant committed the sanctionable conduct for yet the second time. We hold that under these circumstances, the trial court did not act unreasonably and thus, did not abuse its discretion. Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellant asserts that the trial court abused its discretion in the imposition of sanctions pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code because the chapter only governs "[t]he signing of a pleading or motion as required by the Texas Rules of Civil Procedure...." TEX. CIV. PRAC. & REM.CODE ANN. § 10.001 (Vernon Supp.1999). Appellant argues that the trial court's order specifically states that the sanctions were levied for " 'proffering a knowingly false affidavit....' " Appellant contends the trial court abused its discretion because Cobb's false affidavit, which was submitted on two separate occasions with Appellant's special appearance motion, is neither a pleading nor a motion.

While we agree that sanctions may not be levied against an attorney under Chapter 10 for filing a false affidavit that had been signed by someone other than the attorney, we note that in the instant case, Appellant's proffering of a false *affidavit* was not the basis for the sanctions. In arguing that the trial court based the sanction award on the proffering of the false affidavit, Appellant ignores the overriding theme of the trial court's findings of facts and conclusions of law, the most pertinent of which are listed below:

[1] The *Special Appearance* is groundless. [2] The *Special Appearance* was brought in bad faith. [3] The *Special Appearance* was presented for improper purposes, including harassment, causing unnecessary delay and needless increase in the cost of litigation. [4] Each factual contention of the *Special Appearance* did not have evidentiary support. [5] The denials in the *Special Appearance* of Raymark's amenability to this Court's jurisdiction are not warranted by the evidence. [6] The Court has considered the full range of available sanctions and has considered lesser sanctions. The sanctions imposed are limited to what is sufficient to deter repetition of *the conduct* or comparable conduct of those simultaneously situated. The Court finds the sanctions imposed appropriate given that Raymark Industries, Raymark

Corporation and William Skepnek have committed fraud on this Court. (Emphasis added).

In light of the fact that each legal conclusion drawn by the trial court included a reference to the special appearance rather than the affidavit alone, there can be no doubt that "the conduct" to which the court referred was the filing of the special appearance motion and not the mere filing of a false affidavit. Therefore, we hold that the trial court's order clearly indicates that the sanctioned conduct was the filing of the special appearance, not the mere filing of a false affidavit.

■ Next, Appellant questions whether he can be sanctioned under Chapter 10 when the document containing the false information, i.e., the false affidavit, was not signed by him. Appellant contends that because the false information appeared on an affidavit which Appellant did not sign, the trial court abused its discretion in imposing Chapter 10 sanctions against him. Once again, we disagree.

Rule 59 of the Texas Rules of Civil Procedure clearly states that:

Notes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings by copies thereof, or the originals, being attached or filed and referred to as such, or by copying the same in the body of the pleading in aid and explanation of the allegations in the petition or answer made in reference to said instruments and *shall be deemed a part thereof for all purposes.*

TEX.R. CIV. P. 59 (emphasis added). The plain wording of Rule 59 indicates that Cobb's affidavit which Appellant attached to his special appearance motion became part of that motion when Appellant specifically and unequivocally wrote: "In support of the Special Appearance to the Present Motion Objecting to Jurisdiction is the affidavit of James Cobb, President of Raymark, which is attached as Exhibit " 'A' " and incorporated by reference as if fully reproduced herein." The phrase "for all purposes" found in Rule 59 permits no other conclusion. Thus, the statements found in the affidavit, having been incorporated into the special appearance motion, became part of the motion, which was then signed and tendered by Appellant. Therefore, we hold that the trial court did not abuse its discretion in imposing sanctions against Appellant under Chapter 10.

Appellant argues, however, that such a holding violates the rule announced in *GTE Communications Systems Corp. v. Tanner*, 856 S.W.2d 725 (Tex.1993), in

which the Texas Supreme Court held that an attorney could not be sanctioned under Rule 13 for filing a false affidavit that was not signed by him. We find *Tanner* to be readily distinguishable.

In *Tanner*, the Texas Supreme Court made it clear that the issue before the Court was whether the false affidavit, signed by someone other than the attorney, could serve as the basis for sanctions under Rule 13. In that case it was clear that the trial court based the sanction award on the filing of the false affidavit *and* the other pleadings. As discussed above, in spite of the phrase, "for filing a knowingly false affidavit," emphasized by Appellant, the remainder of the trial court's order makes it clear that the sanctioned conduct was solely the filing of the special appearance motion which *was* signed by Appellant. Appellant's Point of Error No. Two is overruled in its entirety.

In Point of Error No. Three, Appellant argues that the trial court abused its discretion in ordering him to pay $5,000 in attorney's fees under Rule 13 of the Texas Rules of Civil Procedure because the record does not support a finding that Appellant had knowledge of the false information at the time he filed the special appearance, or that he filed the special appearance in bad faith or for purposes of harassment.

Before we address this argument, we note that the trial court's order does not specifically say which statute was used to justify the imposition of the attorney's fees. Although the trial court's order adopts certain language that is also found in Rule 13, we believe that Section 10.004(c)(3) of the Texas Civil Practice and Remedies Code would justify the award. Section 10.004(c)(3) states: "A sanction may include any of the following: an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees." Tex. Civ. Prac. & Rem.Code Ann. § 10.004(c)(3) (Vernon Supp.1999). Be-

cause we have already determined that the trial court did not abuse its discretion in imposing sanctions under Section 10.001, we find that the trial court did not abuse its discretion in awarding attorney's fees under Section 10.004(c)(3).

■ Nonetheless, Appellant argues that it was an abuse of discretion to award the fees under Rule 13. Specifically, he asserts that there is no evidence which supports the trial court's findings that "William Skepnek knew that the Cobb Affidavit was false," or that "[t]he Special Appearance was groundless and brought in bad faith, or for purposes of harassment." In support of his argument, Appellant correctly states that before Rule 13 sanctions may be levied, the trial court must have determined that the conditions justifying the imposition of sanctions (i.e., that the pleadings or motion was (1) groundless and (2) either brought in bad faith or for purposes of harassment) existed at the time the sanctioned party filed the pleading or motion. *See Karagounis v. Property Co. of America,* 970 S.W.2d 761, 764 (Tex.App.—Amarillo 1998, writ denied).

When reviewing a no evidence argument, "[t]his Court considers only the evidence and inferences that support the finding, and disregards all evidence and inferences to the contrary." *Miller v. Armogida,* 877 S.W.2d 361, 365 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (citing *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992)). In this case, Appellee introduced ample evidence from which the trial court very well may have inferred pre-filing knowledge as well as bad faith or harassment. Such evidence includes: (1) the fact that Appellant filed the false pleadings for the second time, even after his client admitted in the deposition that it contained false information; (2) the fact that the information was readily available to Appellant and could have been verified with little effort; and (3) the fact that Appellant took no action to correct the false impression his pleadings left with the

court after the taking of his client's deposition. These facts support the inference that Appellant had knowledge of the false nature of his special appearance at the time of filing, and that he filed the special appearance in bad faith. Thus, the trial court did not abuse its discretion in determining that both elements of Rule 13 had been established.

Appellant argues, however, that such a conclusion violates a long-standing rule that "an inference may not be based upon another inference." *Briones v. Levine's Department Store, Inc.,* 446 S.W.2d 7 (Tex. 1969). To affirm the Rule 13 sanctions, Appellant asserts that we must "stack two inferences: 1) that Skepnek knew the affidavit was false when he fled the special appearance; and 2) that Skepnek filed the special appearance in bad faith and/or for purposes of harassment." Appellant's unqualified reliance on *Briones* is misplaced. The Texas Supreme Court recognized in *Briones* that more than one inference may be drawn from the same set of facts or circumstances, but that remote inferences, amounting only to mere surmise or conjecture, cannot be given any probative force. *Id.* at 10 (making reference to 23 TEX. JUR. 2d EVIDENCE § 69, p. 111 and cases cited therein). This rule means that "a vital fact may not be established by piling inference upon inference." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex.1968). In this case, we find that impermissible inference stacking has not occurred. The inference that Appellant knew that the special appearance contained false information is supportable by the direct evidence that was presented to the trial court at the sanctions hearing. Such direct evidence includes the fact that Appellant did nothing to correct the false information after the Cobb and Smith depositions. Similarly, the inference that Appellant filed the special appearance in bad faith or for harassment is supportable by the direct evidence that was presented to the trial court. Such evidence includes the fact that Appellant submitted the special appearance containing the false affidavit for a second time, even after Cobb stated in his deposition that the information in the affidavit was false. We find this significant fact to clearly support the inference that the special appearance was originally filed in bad faith. The fact that the same set of facts and circumstances are used to support these inferences does not bring it within the rule prohibiting inference stacking. In this case, the inference that Appellant filed the special appearance in bad faith or for purposes of harassment is supported by the direct evidence, and is not extracted from the inference that he had pre-filing knowledge. Appellant's Point of Error No. Three is overruled.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.