Lemuel O. HERRING, Appellant,

v.

Michael **WELBORN**, Donald Kubicek, Richard Corrigan, Robert Joseph, Murray Guaranty Title Co., Robert Hyatt, and Cynthia Hyatt, Appellees.

No. 04–99–00473–CV.

Court of Appeals of Texas, San Antonio.

July 12, 2000.

Rehearing Overruled Aug. 4, 2000.

**134**

Gail Dorn, William H. Berry, Jr., Paula S. Waddle, Corpus Christi, for Appellant.

James M. Whitten, Law Offices of James M. Whitten, Corpus Christi, Kirk Dockery, Donaho & Dockery, P.C., Floresville, Frank A. Lazarte, Law Office of Frank A. Lazarte, Rick Holstein, Law Office of Rick Holstein, Corpus Christi, Janna K. Whatley, Joseph & Whatley, P.C., Sinton, Richard P. Corrigan, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

This appeal arises from an order of dismissal and award of sanctions by the 81st Judicial District Court in Wilson County. The underlying dispute, however, stems from a sale of land ordered by the San Patricio County Court at Law during the probate of Ethel Arnetta Herring's ("Ethel") estate. The land is located in Wilson County. One of the appellees, Michael Welborn, has filed a motion to sanction Lemuel and his counsel for filing a frivolous appeal.

We affirm the trial court's order of dismissal, but modify it to be without prejudice. We vacate the trial court's award of sanctions and deny Welborn's motion for appellate sanctions.

### FOR EASE OF REFERENCE

Several individuals are mentioned throughout this opinion:

*Plaintiff / Appellant, His Family, and His Counsel*

| | |
|---|---|
| Lemuel O. Herring | Plaintiff / Appellant |
| Ethel Arnetta Herring | Lemuel's Wife; Deceased |
| Katina Brauchle | Daughter of Lemuel & Ethel; Former Administratrix of Ethel's Estate |
| Jimmy Robert Keys | Ethel's Son; Lemuel's Stepson |
| Paula S. Waddle | Lemuel's Attorney |

*Defendant / Appellee / Movant for Sanctions*

| | |
|---|---|
| Michael Welborn | Judge, San Patricio County Court at Law. This court is sitting in probate of Ethel's estate and ordered the sale of the land. |

*Defendants / Appellees*

| | |
|---|---|
| Donald Kubicek | Successive Dependent Administrator of Ethel's Estate |

Robert & Cynthia Hyatt — Purchasers of the Land.
Robert Joseph — The Hyatts' Attorney
Richard Corrigan — The Receiver. The San Patricio court appointed Corrigan when Lemuel would not consummate the sale to the Hyatts.
Murray Guaranty Title Co. — Title Company and Escrow Agent.

We refer to the San Patricio County Court at Law as the "San Patricio court" and the 81st Judicial District Court as the "trial court." Except for Ethel and Lemuel, we refer to people by their surnames for convenience and uniformity. We refer to the land in Wilson County as "the land."

This is the third appeal that springs from the administration of Ethel's estate. *See In re Estate of Herring,* 970 S.W.2d 583 (Tex.App.-Corpus Christi 1998, no pet.) (*Herring I* ); *see also In re Estate of Herring,* 983 S.W.2d 61 (Tex.App.-Corpus Christi 1998, no pet.) (*Herring II* ). In *Herring I,* Lemuel sued Keys in the San Patricio court to recover community property that he alleges Ethel fraudulently transferred to him. In *Herring II,* Lemuel attacked the San Patricio court's appointment of a receiver to carry out the court-ordered sale of the land.

## BACKGROUND

The land was the community property of Ethel and Lemuel Herring. Ethel died, survived by Lemuel, Brauchle, and Keys. Lemuel inherited an undivided interest in 1/2 of the land; each child inherited an undivided interest in ¼ of the land. Brauchle eventually quit-claimed her interest to Lemuel. The probate court later awarded Lemuel the interest held by Keys. The trial court made this award by way of constructive trust when Keys failed to appear at trial after *Herring I* was remanded to the San Patricio court.

During the probate of Ethel's estate, the Hyatts signed an earnest money contract with Brauchle, the dependent administrator of Ethel's estate, to purchase the land. As a dependent administration, the sale was subject to the approval of the San Patricio court. The following excerpt from *Herring II* provides a helpful summary of the facts (and the law the Thirteenth Court applied to those facts) after the Hyatts signed the contract to purchase the land:

> When Ethel died and an [administratrix] was appointed ... the ... land ... passed, along with her other assets, into *the management and control of the administrator of her estate.* During the administration of the ... estate, the [San Patricio] court issued an order ... authorizing the administrator ... to sell [the] ... land.... The [administratrix] of [her] estate [then] had the authority, by order of the [San Patricio] court, *to convey the entire community interest in the property, including Lemuel's interest ... to a third party....*

> [W]hen a sale of real property is ordered and approved by the probate court, the [administratrix] has the power and authority to execute a deed transferring title to such property.... There is no additional requirement for the holder of a community interest in the property to join in the deed....

*Herring II,* 983 S.W.2d at 63 (emphasis added). Lemuel refused to sign the deed, which would have allowed the transaction to close and Brauchle to pay off the debts of the community. The record is unclear as to the sequence of events, but the San Patricio court soon appointed Kubicek as successor dependent administrator of Ethel's estate. According to the Thirteenth Court:

> [T]he [San Patricio] court later issued an order compelling Lemuel to sign the deed.... Lemuel ... refused and ... the present successor administrator, Donald Kubicek, sought appointment of a receiver for the sole purpose of completing the sale and conveyance of the property. The ... court heard the motion and appointed a receiver to sell the property and distribute the proceeds, finding that the estate has present debts [that] could only be satisfied out of the proceeds of a sale of the property, and that the estate presently has a sales

contract for the property which [Lemuel] refuses to convey. From that order, Lemuel brings the present interlocutory appeal, ... challenging the right of the trial court to appoint a receiver.

*Id.* at 63–64. The court concluded that the [San Patricio] court had "discretion to appoint a receiver to carry out the order of sale." *Id.* at 65. The estate eventually conveyed the land to the Hyatts.

Unsatisfied with the outcome in the San Patricio and appeals courts, Lemuel brought suit in Wilson County, where the land is located, against Welborn, Kubicek, Corrigan, Joseph, the Hyatts, and Murray Guaranty. In addition to several causes of action, Lemuel sought a temporary restraining order and a temporary injunction to enjoin the defendants from further "encumbering, subdividing, deeding, transferring or otherwise affecting the property." The trial court granted the temporary restraining order.

The defendants filed separate pleas to the trial court's jurisdiction. In addition to questioning the court's jurisdiction, Welborn filed a motion for sanctions. At the hearing, the trial court granted the defendants' pleas to the jurisdiction. The court then awarded sanctions to the defendants on the basis of the amount they expended in attorney's fees.

On appeal, Lemuel raises four issues. He asserts that the trial court erred by: 1) dismissing the case for a lack of jurisdiction, 2) awarding sanctions, 3) denying the application for temporary injunction, and 4) dismissing the suit with prejudice.

## DISCUSSION

### 1. Jurisdiction of San Patricio Statutory County Court at Law (Issue One)

In his first issue, Lemuel asserts that jurisdiction over this case lies with the trial court, not the San Patricio court. According to Lemuel, the trial court erred in dismissing the suit.

### a. Standard of Review

■ Whether the trial court had subject matter jurisdiction "is a question of law subject to de novo review." *See* W. Wendell Hall, *Standards of Review in Texas,* 29 St. MARY'S L.J. 351, 373 (1998). We review the trial court's order of dismissal by construing the pleadings in Lemuel's favor and looking to his intent. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993).

### b. Construing Lemuel's Pleadings

Lemuel alleges that the San Patricio court followed improper procedures in selling the land. In his original petition, Lemuel asserts various causes of action to restore his ownership interest and obtain redress for the probate court's allegedly improper court-ordered receivership and sale:

- declaratory judgment (Lemuel asked the trial court to void the conveyance to the Hyatts and quiet title in favor of Lemuel);

- cancellation of deed (while the sale was pending, Lemuel recorded a lis pendens[1] in Wilson County; he asserts that the transfer was improper, among other reasons, because of the lis pendens, inadequate consideration, and inadequate notice prior to the probate court's order of sale);

- conversion (he seeks both legal title and possession of the land); and

- recovery of money paid (Joseph, Kubicek, and Murray Title received funds when the transaction closed).

---

1. The lis pendens is irrelevant. Although transfers may still be made after a lis pendens is recorded, "the third party will acquire no better title than that which remains in the vendor at the close of the suit." LEE H.

LYTTON, HANDBOOK ON TEXAS REAL PROPERTY LAW, § 22–12, at 270 (1996) (citing *King v. Tubb,* 551 S.W.2d 436 (Tex.Civ.App.-Corpus Christi 1977, no writ)).

In addition, Lemuel seeks punitive damages because the transfer to the Hyatts was allegedly far below market value.

Lemuel also seeks injunctive relief against the defendants that would bar any further action on the land. Lemuel states in his petition that he does not want the land sold pending the outcome of *Herring I* lawsuit, which dealt with fraud on the community by Ethel and her son, Keys. The *Herring II* court disposed of this issue: "The fact that Herring has made allegations of fraud that might affect the composition of the estate, or the amount Herring may ultimately receive for his community interest, does not deprive the [probate] court of its ability to carry out the prior order of sale before the opportunity for that sale is lost." *Herring II*, 983 S.W.2d at 65.

Other than the punitive damages and injunctive relief, Lemuel seeks only a restoration of his ownership interest in the land. Because the standard of review calls this court to ascertain Lemuel's intent by construing his pleadings in his favor, there are two (possibly overlapping) results that we believe are possible in construing his pleadings:

1. The petition filed in the trial court amounts to a collateral attack on the San Patricio court's proceedings because alleged procedural deficiencies are at the heart of his complaints; and/or
2. The relief sought in the trial court amounts to an objection to the sale and a request that the sale ordered by the San Patricio court (and other development activities) be halted.

In order to resolve the effect of this construction, we must examine the probate jurisdiction of the San Patricio court.

### c. The Probate Jurisdiction of the San Patricio Court

San Patricio County has one statutory county court. *See* TEX. GOV'T CODE ANN. § 25.2071 (Vernon Supp.2000). This statutory county court has, concurrent with the constitutional county court, "the probate jurisdiction ... for county courts." *See id.* § 25.0003(d). The Probate Code requires applications and motions to be filed in the San Patricio court or the constitutional county court:

> In those counties where there is a statutory probate court, county court at law, or other statutory court exercising the jurisdiction of a probate court, all applications, petition and motions regarding probate and administrations shall be filed and heard in *such courts and the constitutional county court, rather than in the district courts,* unless otherwise provided by the legislature....

TEX. PROB.CODE ANN. § 5(c) (Vernon Supp. 2000) (emphasis added). Because the statutory county court in San Patricio County is a court "exercising original probate jurisdiction," it has the power to hear "all matters incident to an estate." *Id.* § 5(e).

The San Patricio court's jurisdiction in probate matters is broad, and includes the power to "probate wills ... and transact all business appertaining to estates subject to administration ... including the settlement, partition, and distribution of such estates." *See* TEX. PROB.CODE ANN. §§ 3(ii), 4 (Vernon Supp.2000). In matters appertaining, or incident, to the estate, the San Patricio court has the power to handle "all actions for trial of title to land incident to an estate ... and generally all matters relating to the settlement ... of estates." *See id.* § 5A(a) (Vernon Supp.2000).

Traditionally, county courts such as the San Patricio County Court at Law did not enjoy such broad probate jurisdiction. *See* Statute Note, Greg Standerfer, *Probate Code Section 5: Jurisdictional Expansion Through Redefinition: Is It Constitutional?*, 37 BAYLOR L.REV. 291, 291–95 (1985). This court has recently reviewed the history and background of probate jurisdiction and explained that the Legislature has broadened the statutory county court's jurisdiction:

As amended, section 5 expanded the jurisdiction of the county court in probate matters to allow it the power to hear all matters incident to an estate, including, but not limited to, an action to construe a will....

*Garza v. Rodriguez,* 18 S.W.3d 694, 698 (Tex.App.-San Antonio 2000, no pet.). Yet, a pending probate matter is necessary to invoke that power:

Section 5's clause "matter incident to an estate," however, will not create jurisdiction for the county court in the absence of a pending probate matter.... Stated differently, before a matter can be regarded as incident to an estate over which the county court acting as a probate court would have jurisdiction, a probate proceeding must actually be pending.... [A] court empowered with probate jurisdiction may only exercise its probate jurisdiction over matters incident to an estate when a probate matter proceeding related to such matter is already pending....

*Id.* Now, "under the current statutory scheme of probate jurisdiction, a district court can exercise jurisdiction over a matter incident to an estate *where no probate court has otherwise acquired jurisdiction* over the estate." *Id.*

The desire to "provide a quick and full settlement of a decedent's estate in a single proceeding" forms the underpinnings of the Legislature's intent to broaden the scope of statutory county court jurisdiction. *See* Statute Note, Greg Standerfer, *Probate Code Section 5: Jurisdictional Expansion Through Redefinition: Is It Constitutional?,* 37 BAYLOR L.REV. 291, 300 (1985); *see also English v. Cobb,* 593 S.W.2d 674, 676 (Tex.1979) (stating that the underlying purpose of the changes to the probate scheme was to "increase the jurisdiction of the county courts in 'matters incident to an estate'" to promote full and quick settlements).

Lemuel argues that "substantial authority exists for the filing of a lawsuit regarding real estate title in a district court,

particularly [in] the county ... where the property is located, even while a probate remains open." The cases to which he cites, however, are distinguishable from the facts of the present case.

### (1) CARROLL V. CARROLL-INDEPENDENT V. DEPENDENT ADMINISTRATION

Lemuel cites *Carroll v. Carroll* to support an expansive view of the district court's jurisdiction during the pendency of a probate proceeding in statutory county court. *See Carroll v. Carroll,* 893 S.W.2d 62, 68–69 (Tex.App.-Corpus Christi 1994, no writ). Yet, *Carroll* involved a *constitutional* county court, which has concurrent probate jurisdiction with the district court when there is *no statutory county* court that has been created by the Legislature to exercise probate jurisdiction. *See id.* at 66; *see also* TEX. PROB.CODE ANN. § 5(b) (Vernon Supp.2000). Because *Carroll* involved an independent administration, further action by the county court was not permitted because the estate was being administered independently. *See Herbst v. Sheppard,* 995 S.W.2d 310, 313–14 (Tex. App.-Corpus Christi 1999, pet. denied); *see also* TEX. PROB.CODE ANN. § 145(h) (Vernon 1980). Unlike *Carroll,* the present case involves a dependent administration in a statutory county court.

### (2) GOODWIN V. KENT-IN WHICH COURT WERE THE PLEADINGS FILED FIRST?

In *Goodwin v. Kent,* the appeals court considered which court (the County Court at Law of Smith County or the district court in Rusk County) had dominant jurisdiction to resolve a land title dispute. *See Goodwin v. Kent,* 745 S.W.2d 466, 469 (Tex.App.-Tyler 1988, no writ). The statutory county court admitted the decedent's will to probate in 1974 as an independent administration. *See id.* at 467–68. No showing had been made that the estate administration was closed. *See id.* at 468. In 1987, Goodwin petitioned the 4th District Court of Rusk County (where the land was located) to determine his owner-

ship in one of the decedent's tracts of land. *See id.* Later that year, Glass petitioned the Smith County court to determine the title of the land. *See id.* Glass then filed a plea in abatement and motion to transfer venue from Rusk County to Smith County. *See id.* The following month, Goodwin filed a Plea in Abatement in the Smith County court and alleged that the district court in Rusk County had dominant jurisdiction. *See id.* Judge Kent (of Smith County) overruled Goodwin's plea in abatement; Goodwin then petitioned the Tyler Court of Appeals to issue a writ of mandamus to compel the abatement. *See id.*

The appeals court found that both courts have "at least the power to hear and decide a title issue." *Id.* at 469. The appeals court stated that the county court had a duty to dismiss the petitions that Goodwin filed in Smith County. *See id.* Yet, the court apparently reached this result because the title dispute had not been filed previously in the Smith court. *See id.*

Lemuel states in his petition that he "had objected throughout the probate proceedings in San Patricio County to the sale of the property." In addition, when the probate court issued an order to sell Lemuel's land, followed by an order approving the sale, he (as an interested party) could have complained then the sale was improper. Finally, Lemuel's counsel conceded during oral argument that issues, such as whether personal property should have been sold first in order to pay the estate debts, remain unresolved. These reasons, in light of the San Patricio court's continuing role in supervising the dependent administration [2] of Ethel's estate, support the trial court's dismissal of Lemuel's suit.

(3) *CRAWFORD V. TOWN OF FLOWER MOUND*-A STATUTORY LIMIT TO PROBATE JURISDICTION

*Crawford v. Town of Flower Mound* involved a suit by taxing entities to recover

**2.** One possibility, unclear from the *Goodwin* opinion, is that it reached its result because

past due ad valorem taxes. *See Crawford v. Town of Flower Mound,* 933 S.W.2d 727, 728 (Tex.App.-Fort Worth 1996, writ denied). The Texas Tax Code requires taxing entities to bring suit for delinquent property tax in the county where the real estate is located. *See* TEX. TAX CODE § 33.41(a) (Vernon 1992). The *Crawford* court construed this provision as providing dominant jurisdiction to a court in which the land is located over the county of probate. *See Crawford,* 933 S.W.2d at 731. The court stated merely that the probate provisions of sections 5 and 5A "do not extend to judgments and foreclosures for delinquent property taxes on property located outside the county of the probate proceeding." *Id.; see Bailey v. Cherokee County Appraisal Dist.,* 862 S.W.2d 581, 586 (Tex.1993) (stating that the statutory county court in Cherokee County, which was exercising probate jurisdiction, was the proper court to hear a suit for past due ad valorem tax instead of the district court in Cherokee County).

In the present case, Lemuel cites the mandatory venue provision for suits involving land to support maintaining his suit in Wilson county. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011 (Vernon 1986). Yet, "the requirement that suit be brought in the county where the land is located is one of venue or privilege, and not of jurisdiction, and it may be waived." *Camellia Diced Cream Co. v. Chance,* 339 S.W.2d 558, 561 (Tex.Civ.App.-Houston 1960, no writ). The jurisdictional requirement of the Tax Code makes good policy sense because it allows taxing authorities to be able to litigate in one county. *See Crawford,* 933 S.W.2d at 730.

(4) *GAYNIER v. GINSBERG*-THE DISTRICT COURT RETAINS JURISDICTION OVER SOME MATTERS

In *Gaynier v. Ginsberg,* the Dallas Court of Appeals addressed which type of

the administration was *independent.*

court (district or county) had jurisdiction in a suit that sought to remove a trustee and impose a constructive trust. *See Gaynier v. Ginsberg*, 763 S.W.2d 461, 462 (Tex. App.-Dallas 1988, no writ). The appeals court concluded that because district courts have jurisdiction to remove trustees, the district court should maintain jurisdiction over the suit. *See id.* at 463. The court also explained that "[w]hile the amendments to the Texas Constitution and the Probate Code did broaden the jurisdiction of probate courts, they did not take away the jurisdiction of the district courts." *Id.* "[A]s far as [the] action involves the imposition of a constructive trust, it was properly brought in the district court." *Id.; see* TEX. PROP.CODE § 115.001(a) (Vernon 1995). Although Lemuel sought imposition of a constructive trust when *Herring I* was on remand to the San Patricio court, he does not seek that remedy in the present case. Also, the facts suggest that *Gaynier* involved an independent administration, which may have affected the outcome, as discussed above in *Carroll. See Gaynier*, 763 S.W.2d at 462.

#### d. The Trial Court Did Not Err in Dismissing Lemuel's Claim

The trial court did not err in dismissing Lemuel's claim for a lack of jurisdiction for several related reasons.

(1) THE PROBATE AUTHORITY OF THE SAN PATRICIO COURT ENCOMPASSES THIS LAWSUIT

■■■ The Legislature has the power to increase or diminish statutory county court and district court probate jurisdiction. To this end, the Legislature has conferred broad jurisdiction upon the San Patricio court, a statutory county court empowered to sit in probate. Once a probate proceeding is under way, the statutory county court's authority to deal with all matters incident to an estate is triggered. *See Schuld v. Dembrinski*, 12 S.W.3d 485, 487 (Tex.App.-Dallas 2000, no pet.) (allowing a

partition proceeding among heirs to proceed in a county court at law because no probate proceeding was pending in the statutory probate court). "In other words, the pendency of a probate proceeding is a requisite for a court's exercise of jurisdiction over matters related to it." *Id.* The broad authority of the San Patricio court, which is ongoing because of the continuing administration of Ethel's estate, exists to the exclusion of the Wilson County district court in matters that are incident to the estate.

The San Patricio court had authority to issue an order that authorized the sale. *See* TEX. PROB.CODE ANN. § 355 (Vernon 1980). The court's action "in confirming or disapproving the report of sale has the "force and effect" of a final judgment." *Id.* As such, "any person interested in the estate or in the sale shall have the right to have such decrees reviewed as in other *final judgments in probate proceedings.*" *Id.* (emphasis added); *see Dignowity v. Baumblatt*, 38 Tex.Civ.App. 363, 366, 85 S.W. 834, 835 (1905); *see also Heath v. Layne*, 62 Tex. 686 (1884).

Resolution of the conveyance to the Hyatts, ordered by a probate-court, is vital to the overall management and settlement of the estate's debts. If the conveyance is voided, then the estate will need to satisfy its debts in other ways. Because Lemuel's pleadings attack a sale ordered by the San Patricio court's sale, the proper method for Lemuel to seek relief is to exhaust his procedural remedies with the San Patricio court and then pursue an appeal accordingly. Lemuel's actions during the estate administration support this result. Under *Goodwin v. Kent*, the Wilson County district court should not exercise jurisdiction. Lemuel complained about the sale throughout the probate of Ethel's estate in the San Patricio court and attacked alleged procedural deficiencies there as well (culminating in *Herring II* ).

(2) JURISDICTION REQUIREMENTS TRUMP VENUE PROVISIONS

■■■ This jurisdictional requirement "trumps" the venue provision of bringing

suit in the county where the land is located. To illustrate this concept, the Tax Code (discussed above) provides an example of a *jurisdictional* requirement for delinquent ad valorem tax suits. These suits *must* be brought in the county in which the land is located. The Civil Practice and Remedies Code's *venue* provision for suits relating to land is not jurisdictional. Although the county in which the land is located is the mandatory venue for land-related suits, this privilege of litigating in that county may be waived. A jurisdictional requirement (such as that contained in the Probate or Tax Codes) takes precedence over a venue requirement.

### (3) Wilson County is Not Appropriate for Relief Against the Successor Administrator

■ Lemuel seeks injunctive relief[3] and punitive damages from Kubicek, the successor administrator. Lemuel asserts that because the suit is, in part, against Kubicek in his official capacity, the district court in *Wilson* County has original jurisdiction in this case. We disagree. If Lemuel wished to bring suit against Kubicek in a district court, the proper district court to seek such injunctive relief, assuming that the district court were the proper forum, would be in San Patricio County, the county in which the estate is being probated. *See* Tex. Prob.Code Ann. § 5(a) (Vernon Supp.2000).

### (4) Policy Reasons Support the Wilson County Court's Dismissal of Lemuel's Pleadings

■ Finally, policy reasons support the trial court's dismissal. A court sitting in probate has the power to issue orders to the administrator to sell land regardless of which county the land is located. If an interested party objects to the sale, the court that issued the orders is the best

court to hear the objection for several reasons. First, the court is afforded the opportunity to correct its mistake. Second, because the court is responsible for the settlement of the estate, any change in the disposition of an asset might affect the estate's ability to satisfy its debts. Third, judicial economy favors a consolidated series of actions in one court rather than multiple litigation in many courts. We cannot imagine anything more chaotic than interested parties and their counsel visiting the various courts of our state's 254 counties in order to settle land disputes that arise from the administration of an estate. The court sitting in probate has broad authority to resolve the complex, interwoven, and difficult matters that the interested parties present for its consideration. We believe that our Legislature intended to allow that authority to be exercised in as unfettered a manner as possible.

We affirm the trial court's dismissal for lack of jurisdiction.

### 2. Hearing on Injunctive Relief (Issue Three)

### a. Standard of Review

■ We review the trial court's denial of a temporary injunction under the abuse of discretion standard. *See* W. Wendell Hall, *Standards of Review in Texas*, 29 St. Mary's L.J. 351, 387 (1998). The trial court abused its discretion in denying Lemuel's application for temporary injunction if it misapplied the law to the established facts or if the evidence reasonably supports the conclusion that Lemuel has a probable right to recovery. *See State v. Southwestern Bell Tel. Co.* 526 S.W.2d 526, 528 (Tex.1975). In reviewing the trial court's denial of Lemuel's application, we draw "all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment."

**3.** A related problem to the injunctive relief question relates to the resolution of *Herring I*. If Lemuel is using the pendency of the *Herring I* as a basis for injunctive relief, the San

Patricio court resolved that matter on remand. As such, the issue is moot and there is no longer a basis provided by Lemuel that supports halting activity on the land.

### b. Application

■■■ Because the trial court dismissed the lawsuit for a lack of jurisdiction, its decision not to hold a hearing on injunctive relief was proper as well. A court's jurisdiction over the subject matter of the case is essential to its authority to decide the merits of the case. *See Texas Ass'n of Bus.*, 852 S.W.2d 440, 443–44 (Tex.1993); *cf. Southwest Airlines Co. v. Texas High–Speed Rail Auth.*, 863 S.W.2d 123, 125–26 (Tex.App.-Austin 1993, writ denied) (concluding that the trial court properly dismissed Southwest Airlines' suit for injunctive relief after the court had previously decided that it lacked subject matter jurisdiction to determine the airline's suit for judicial review of an agency order). Lemuel's desire to stop the parties from carrying out the order of the San Patricio court's order was central to Lemuel's case. We overrule Lemuel's third issue.

### 3. Trial Court Sanctions (Issues Two and Four)

We turn next to the propriety of the trial court's sanctions against Lemuel and Waddle. We assume, without deciding, that the trial court had jurisdiction to consider the appellees' various motions for sanctions.

Welborn moved for sanctions against Lemuel and Waddle, arguing that:

A. Lemuel's pleading is for an improper purpose, in violation of Texas Civil Practice and Remedies Code section 10.001(1); and

B. The legal arguments in Plaintiff's pleading are not warranted by existing law, in violation of section 10.001(2).

Welborn also sought sanctions under Texas Rule of Civil Procedure 13. At the hearing, the defendants joined in Welborn's motion or filed their own motions for sanctions.

The court specifically found that Lemuel and Waddle violated sections 10.001(1)-(2) of the Texas Civil Practice and Remedies Code.[4] The trial court awarded sanctions in favor of each defendant in the amount of their respective attorney's fees. The court held Lemuel and Waddle jointly and severally liable for the sanctions. The trial court also issued an order of dismissal with prejudice.

Lemuel argues that the trial court erred in awarding sanctions. He also asks that, in the event this court concludes that the trial court did not err in dismissing for a lack of jurisdiction, that the judgment be modified to reflect a dismissal without prejudice. Welborn, Kubicek, and Joseph argue that the court did not err in dismissing with prejudice. Corrigan, the Hyatts, and Murray Guaranty agree that although the trial court did not err in dismissing with prejudice, the judgment should be

---

**4.** Although the court found that Lemuel and Waddle misrepresented the telephonic notice given to the defendants, it did not specifically find that this conduct violated the provisions pleaded by Welborn, or that sanctions were warranted on the basis of this conduct. As a result, we do not consider this conduct as a basis for the trial court's sanctions. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 10.005 (Vernon Supp.2000) (stating that "[a] court shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed"). In addition, we are not convinced that this conduct supports an award under section 10.001(1)-(2). Although it may support sanctions under

another rule or statute, or fall within the court's inherent power to sanction, the dictates of the statute before us require specificity in the trial court's order. *See University of Tex. v. Bishop*, 997 S.W.2d 350, 356 (Tex. App.-Fort Worth 1999, pet. filed) (allowing findings of fact and conclusions of law when they supplied the particulars lacking in the sanctions order).

The trial court did not award any sanctions under Rule 13. Even if it had, we question whether we would choose to consider this conduct as a basis for sanctions. *See* TEX.R. CIV. P. 13 (stating that "[n]o sanctions under this rule shall be imposed except for good cause, the particulars of which must be stated in the sanction order").

modified to reflect a dismissal without prejudice.

### a. Standard and Scope of Review

We review a trial court's award of sanctions under the abuse of discretion standard. *See Kutch v. Del Mar College,* 831 S.W.2d 506, 508 (Tex.App.-Corpus Christi 1992, no writ). Our scope of review is the entire record that was before the trial court. *See id.* at 512. We review the conflicting evidence in the light most favorable to the trial court's ruling, and draw all reasonable inferences in favor of the court's judgment. *See id.*

### b. Applicable Law

Section 10.001 provides, in part:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law....

TEX. CIV. PRAC. & REM.CODE ANN. § 10.001 (Vernon Supp. 2000). The code continues, explaining the limitations on sanctions that are available to the trial court:

(b) The sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated.

(c) A sanction may include any of the following:

(1) a directive to the violator to perform, or refrain from performing, an act;

(2) an order to pay a penalty into court; and

(3) an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees.

*Id.* § 10.004(b)-(c).

In order for a party *seeking* sanctions to prevail, there must be little or no basis for claims, no grounds for legal arguments, misrepresentation of law or facts, or legal action that is sought in bad faith. In *Skepnek v. Mynatt,* the appeals court affirmed a trial court's award of sanctions against an attorney. *See Skepnek v. Mynatt,* 8 S.W.3d 377, 381 (Tex.App.-El Paso 1999, pet. filed). Among its findings of fact, the trial court explained: "[e]ach factual contention of the Special Appearance did not have evidentiary support" and that "[t]he denials in the Special Appearance of Raymark's amenability to this Court's jurisdiction are not warranted by the evidence." *Id.* Conversely, another court of appeals denied an appellant's request for sanctions when the appellee sought a cost bond that was not authorized under the Rules of Procedure. *See In re Marriage of Richards,* 991 S.W.2d 30, 32 (Tex.App.-Amarillo 1998, no pet.) (explaining that the appellee believed that such a motion may have been subjectively reasonable because it was granted by the trial court). These cases highlight the severity with which conduct by counsel and party must reach in order to be sanctionable.

In confronting the issue of Rule 13 sanctions, the First Court of Appeals explained: " 'Groundless' means without basis in law or fact and not warranted by a good faith argument for an extension, modification, or reversal of existing law." *Laub v. Pesikoff,* 979 S.W.2d 686, 693 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). The movants for sanctions argued that the appellant's claims were groundless "because the judicial communication privilege

clearly bars the claims which [the appellant] has raised in this case.... [The movants] also argue that [the appellant] never specifically argued for an extension, modification, or reversal of Texas law...."
*Id.*

The appeals court held that the trial court abused its discretion in awarding sanctions, explaining:

> Clearly, rule 13 is a tool that must be available to trial courts in those egregious situations where the worst of the bar uses our system for ill motive without regard to reason and the guiding principles of the law. The rule, however, cannot become a weapon used to punish those with whose intellect or philosophic viewpoint the trial court finds fault. Innovative changes in the law or applications of the law must by necessity come from creative and innovative sources. By their very definition, changes in the law are different from and in disagreement with what has been historically accepted. We cannot allow rule 13 to have a chilling effect on those who seek change in legal precedent.

*Id.* at 693–94.

(1) AWARD OF MONETARY SANCTIONS

■ In the present case, there is scarce evidence of factual misrepresentations that bear heavily upon the case. Lemuel's interpretation of the facts might be debatable, but is not without basis in the trial record. Lemuel alleged that the issues surrounding the land had not been litigated, alleging that his case was distinct from the pending estate administration.

His response pleadings offer further legal authority for his jurisdictional arguments. Although the trial court properly disagreed with Lemuel's interpretation of case law and statute, these authorities offer at least a debatable argument for extending jurisdiction to the Wilson County district court.

Simply put, the parties disagree over how the issue is to be framed and whether casting Lemuel's pleadings in a particular light warrants litigating in one forum over another. Lemuel's attempt at reaching a favorable result had some arguable legal basis. Any misstatements or misrepresentations were explained, and appear to be inadvertent. The legal authority relied upon was not misrepresented. Lemuel attempted to stretch the law to be applicable to his case. It did not work. But because the argument was correctly rejected by the trial court does not mean it was sanctionable.[5]

We conclude that the trial court erred in awarding monetary sanctions.

(2) DISMISSAL WITH PREJUDICE

■ We turn next to the dismissal with prejudice. Welborn argues that "the trial court's issuance of a dismissal" with prejudice "amounts to a directive on Appellant to refrain from performing an act." Welborn further calls our attention to *Cloughly v. NBC Bank—Seguin, N.A.*, 773 S.W.2d 652, 656 (Tex.App.-San Antonio 1989, writ denied). In *Cloughly*, we quoted Rule 13, which permits the dismissal of a suit with prejudice because it incorporates by reference Rule 215.2(b)(5). *See*

---

5. We are unsure of the extent to which the trial court awarded sanctions based upon Welborn's judicial immunity. Yet, during the hearing, Waddle clarified that Lemuel was not suing Welborn in his official capacity. Rather, she stated, "[w]e are trying to stop him from doing anything further with the property, Your Honor." Welborn's judicial immunity was pleaded in the context of the trial court's jurisdiction. Yet, a party's judicial immunity does not necessarily require it to dismiss for lack of jurisdiction; judicial immunity is a defense, which would be an appropriate issue at, for example, a summary judgment proceeding. *See Garza v. Morales*, 923 S.W.2d 800, 803 (Tex.App.-Corpus Christi 1996, no writ) (rendering take-nothing summary judgment on the grounds of judicial and sovereign immunity). Our result today does not mean that prospective litigants have license to sue trial judges. Rather, under the facts before us, in light of the trial record, and with the uncertainty that hangs over the trial court's support for its sanctions award, monetary sanctions are not appropriate.

*id; see also* Tex.R. Civ. P. 13, 215.2(b)(5). Section 10.004 does not provide a similar incorporation of another sanctions list.

We have not located case law that extends section 10.004 to allow the dismissal of cases with prejudice. We decline to bend section 10.004 to allow dismissals with prejudice. If the Legislature wishes to empower trial courts with this power when courts impose sanctions under the Civil Practices and Remedies Code, it may do so. In light of the trial court's order, we are not convinced that the trial court intended to dismiss the cause with prejudice *as a sanction.*[6] *See* Tex. Civ. Prac. Rem Code Ann. § 10.005 (Vernon Supp. 2000).

■■■ Because we are outside the area of sanctions in considering the dismissal with prejudice, we determine next whether the court had the power to dismiss Lemuel's suit with prejudice. "A trial court is powerless to dismiss a cause 'with prejudice' after determining it lacks subject-matter jurisdiction over the cause." *Star Houston, Inc. v. Texas Dep't of Transp.,* 957 S.W.2d 102, 111–12 (Tex. App.-Austin 1997, pet. denied); *see also Schenker v. City of San Antonio,* 369 S.W.2d 626, 630 (Tex.Civ.App.-San Antonio 1963, writ ref'd n.r.e.) (stating that because the court did not hold a trial on the merits, it erred in dismissing with prejudice).

If a dismissal with prejudice were a viable sanction under the Civil Practice and Remedies Code, we would conclude that the trial court abused its discretion in dismissing with prejudice. Because the trial court concluded that it lacked jurisdiction, another court could have had jurisdiction. Toward the end of the hearing, the trial court acknowledged the possibility that Lemuel could refile the suit in San Patricio county. The trial court should not have prohibited Lemuel from attempting

to refile his lawsuit. Even if permitted as a sanction, an outright dismissal with prejudice goes beyond what is "sufficient to deter repetition of the conduct" in the present case. Tex. Civ. Prac. & Rem.Code Ann. § 10.004(b) (Vernon Supp.2000).

We sustain Lemuel's second and fourth issues.

### 4. Motion for Appellate Sanctions

■■■ Welborn filed a motion for sanctions against Lemuel and Waddle, claiming that the pending appeal is frivolous. Welborn does not explain why the appeal is frivolous. Lemuel (and Waddle) responded to Welborn's allegations in a reply brief. We turn first to how a decision by this court regarding the award of appellate sanctions will be reviewed.

> If the court of appeals determines that an appeal is frivolous, it may-on motion of any party [and] after notice and a reasonable opportunity for response-award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

Tex.R.App. P. 45.

■■■ Whether to grant sanctions is within the discretion of the reviewing court. *See* W. Wendell Hall, *Standards of Review in Texas,* 29 St. Mary's L.J. 351, 514 (1998). As long as Lemuel's argument has a "reasonable basis in law and constituted an informed, good faith challenge to the trial court's judgment," this court's award of sanctions probably would not be appropriate. *See General Elec. Credit Corp. v. Midland Cent. Appraisal Dist.,* 826 S.W.2d 124, 125 (Tex.1991) (per curiam). We have stated that an award of sanctions on appeal "will be imposed only

---

**6.** The reporter's record supports our conclusion. The record shows that counsel argued for the court to consider prohibiting Lemuel from refiling the lawsuit "in Wilson County, or anywhere in the State of Texas." The

court replied, though, "I think that she could refile it in Judge Welborn's Court," to which counsel replied, "In Judge Welborn's Court, yes."

if the record clearly shows the appellant has no reasonable expectation of reversal." *Campos v. Investment Management Properties,* 917 S.W.2d 351, 355 (Tex.App.-San Antonio 1996, writ denied).

In *Campos,* the appellant misrepresented the plain language of the Property Code to this court. *See id.* at 358 (Green, J., concurring). The appellant's arguments in *Campos* were not supported by case law. *See id.* at 355. Any citations to case law instead were irrelevant to the merits of the appeal. *See id.* at 355–56. The court sanctioned the appellant, determining that the appellant had no reasonable basis for believing that the case would be reversed. *See id.* at 356. Such sanctions serve not only to punish, but to dissuade litigants and counsel from straining judicial resources in bad faith.

The present case, however, does not present itself as devoid of merit. Lemuel does not twist the facts of the dispute. There is only one significant disagreement regarding one of the factual issues (whether the Hyatt's received a refund of their earnest money). That particular factual allegation does not form an underpinning of our opinion, nor is that conclusion improbable without a very close reading of the evidence in question.

The law of probate jurisdiction is less than perfectly clear. *See Weldon v. Hill,* 678 S.W.2d 268, 274 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.) (regarding the various code sections, statutes, and constitutional provisions relating to the probate of an estate as constituting a "jurisdictional nightmare"). In light of, or perhaps despite, this murkiness, Lemuel managed to advocate a position that is supported by citations to case law and appropriate statutes. Lemuel's interpretation of previous courts' opinions in the area of probate jurisdiction, and their application to the present case, is not out of touch with reality. We disagree with the interpretation of the case law by Lemuel. But we do not think the appeal is frivolous. We deny Welborn's motion for appellate sanctions.

## CONCLUSION

We affirm the trial court's order of dismissal for lack of jurisdiction, but order that it be modified to be a dismissal without prejudice. We vacate the trial court's award of sanctions, and we overrule Welborn's motion for appellate sanctions.

Concurring and dissenting opinion by: PAUL W. GREEN, Justice.

PAUL W. GREEN, Justice, concurring and dissenting.

I concur in part and dissent in part. I would affirm the trial court's order in its entirety, and I would add appellate sanctions against Herring.

I concur with the majority's decision affirming the trial court's order dismissing Herring's lawsuit, but I dissent to the majority's decision to reform the order into a dismissal without prejudice and deny the Welborn defendants the monetary sanctions they were awarded below.

The majority says Herring's attempt to litigate the land title issues in Wilson County had some arguable legal basis. I disagree. Although the land was located in Wilson County, once the property came under the jurisdiction of the San Patricio County probate court, any title issue involving the property was properly raised there. It cannot be reasonably argued, however creatively, that title issues foreclosed by a final judgment in one court of competent jurisdiction can be relitigated in another court of equal jurisdiction.

Moreover, the frivolous and harassing character of Herring's actions are clearly revealed by the fact that he sued the San Patricio County trial judge whose ruling he did not like, and even now appeals the dismissal of his claim against that judge. I believe the record amply supports the trial courts conclusion that Herring brought this groundless lawsuit for improper purposes.

The plaintiff and his attorney evidently thought they might find a friendlier forum in Wilson County. They did not. The trial court made an assessment of the situation and sanctioned them both. I see no abuse of discretion. I would affirm the

trial court sanctions, and would add appellate sanctions against Herring for frivolously appealing the dismissal of Judge Welborn despite his clear judicial immunity.