COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BEVERLY SUE CLARK, | ) | |
| | ) | No. 08-97-00634-CV |
| Appellant, | ) | |
| | ) | Appeal from the |
| v. | ) | |
| | ) | 256th District Court |
| GLENN EUGENE FUNK, | ) | |
| | ) | of Dallas County, Texas |
| Appellee. | ) | |
| | ) | (TC# 95-04793-Z) |
| | ) | |

**O P I N I O N**

Beverly Sue Clark and Glenn Eugene Funk were married June 16, 1990, and had two children of the marriage, Michael Thomas Funk, born April 28, 1991, and Matthew Stuart Funk, born December 1, 1992. The trial court entered a divorce decree and conservatorship and support orders on July 15, 1997, and named Clark, Glenn Funk, and Glenn Funk's parents, John William "Bill" Funk and Dorothy Funk, joint managing conservators. We affirm the judgment of the trial court.

As a preliminary matter, Appellee Glenn Funk argues that Appellant Clark is estopped to appeal the trial court's decree regarding conservatorship and child support.

Glenn Funk argues that he and Clark entered into a mediated agreement that meets the requirements of TEX.FAM.CODE ANN. §153.0071(e)(Vernon Supp. 2000) and TEX.R.CIV.P. 11 and that Clark in the mediated agreement agreed to the terms of the divorce decree.

The court entered the final decree and the possession and conservatorship orders on July 15, 1997. The mediated agreement was not dated but was filed September 9, 1997. In the

agreement, the parties "approve[d] the form of the Decree of Divorce" and agreed that where the decree and the agreement conflict, the agreement controls. The agreement covers certain ancillary matters and details not covered by the decree and does not contradict the decree with respect to conservatorship or child support.

The plain language of the agreement limits Clark's approval of the decree to form only, not to substance. Nowhere does Clark approve the substance of the conservatorship or support orders. Although Clark agrees that she will pay $44 a week of child support through the Guardian Ad Litem's office, we construe this not as acquiescence to the amount of support but rather an agreement as to the manner of payment. The mediation agreement does not prevent Clark from appealing the decree.

Glenn Funk also argues that Clark is estopped under the principle that a party who accepts the benefits of a judgment is estopped to challenge the judgment. *See Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950). He argues that Clark accepted the benefit of the judgment by making child support payments. We do not construe payment of court-ordered child support as receiving a judgment benefit.

He further argues that Clark is estopped under the principle that where a party voluntarily pays a judgment, the party waives the right to appeal. *See Elkins v. Vincik*, 437 S.W.2d 49, 51-2 (Tex.Civ.App.--Austin 1969, no writ). He argues that Clark voluntarily agreed to pay more child support than the court ordered. The trial court, Glenn Funk argues, has no jurisdiction to enforce the support order by contempt while the order is on appeal. Therefore, Glenn Funk argues, Clark's acquiescence was voluntary. Glenn Funk cites no relevant authority. Also the record does not support his argument. He cites that portion of the final divorce decree where the court

sets Clark's support payment. He further cites another version of the final decree listing higher support amounts for Clark. The latter version appears to be draft version of the final decree and is signed by neither Clark nor her attorney. This does not support his assertion that Clark agreed to higher payments than those ordered by the court. Clark is not estopped to appeal the decree and the possession and conservatorship orders. As such, we will consider her appellate issues in the order she raises them in her brief.

Clark, in several appellate issues, complains the trial court abused its discretion in its conservatorship order. She does not complain about the order generally, but rather complains about specific issues.

Glenn Funk filed his original divorce petition March 21, 1995. The 1995 Family Code amendments took effect April 20, 1995, and for the most part, do not apply to cases then pending.[1] We, therefore, cite and apply the Family Code as it existed before the 1995 amendments.

In determining questions of managing conservatorship, possession, and support of and access to a child, the court shall always consider first the best interest of the child. *See* TEX.FAM.CODE ANN. § 14.07(a).[2] In determining the best interest of the child, the court shall consider the parents' circumstances. *See* TEX.FAM.CODE ANN. § 14.07(b).[3] The trial judge faces the parties and their witnesses, observes their demeanor, and has the opportunity to evaluate the

---

[1] Act of April 6, 1995, 75th Leg., R.S., ch. 20, § 3, 1995 TEX.GEN.LAWS 113, 282.

[2] *See* Act of May 10, 1991, 72nd Leg., R.S., ch. 161, § 3, 1991 TEX.GEN.LAWS 771 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 153.002 (Vernon 1996)).

[3] *See* Act of May 30, 1977, 65th Leg., R.S., ch. 476, § 28, 1977 TEX.GEN.LAWS 1862 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 153.431 (Vernon 1996)).

claims made by each of them. The trial judge, therefore, is in a better position than are we to determine the child's best interest. *See In the Matter of the Marriage of D.M.B. and R.L.B.*, 798 S.W.2d 399, 405 (Tex.App.--Amarillo 1990, no writ). The trial court has broad discretion in determining what is in the best interest of the child in conservatorship matters, and we will not reverse its decision absent an abuse of discretion. *See Eason v. Eason*, 860 S.W.2d 187, 191 (Tex.App.--Houston [14th Dist.] 1993, no writ); *Thompson v. Thompson*, 827 S.W.2d 563, 566-67 (Tex.App.--Corpus Christi 1992, writ denied). A trial court does not abuse its discretion when it bases its decision on conflicting evidence. *See Griffin Indus., Inc. v. The Honorable Thirteenth Court of Appeals*, 934 S.W.2d 349, 357 (Tex. 1996); *Kirkpatrick v. Memorial Hosp. of Garland*, 862 S.W.2d 762, 776 (Tex.App.--Dallas 1993, writ denied).

John and Dorothy Funk, the paternal grandparents of Michael and Matthew Funk, sought only possessory conservatorship in their pleadings. In her first appellate issue, Clark argues that the trial court abused its discretion by appointing John and Dorothy Funk joint managing conservators of the two boys. She says the decree and the orders must conform to the pleadings. We disagree.

The technical rules of practice and pleadings are of little importance in determining conservatorship issues. *See Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967); *In re P.M.B.*, 2 S.W.3d 618, 624 (Tex.App.--Houston [14th Dist.] 1999, no pet.); *Baker v. Ericsson*, 689 S.W.2d 492, 494 (Tex.App.--El Paso 1985, no writ); *C. v. C.*, 534 S.W.2d 359, 361 (Tex.Civ.App.--Dallas 1976, writ dism'd). In cases that involve the parent-child relationship, the best interests of the child or children are of paramount importance. *See In re Macalik*, 13 S.W.3d 43, 45 (Tex.App.--Texarkana 1999, no pet. h.). The trial court has broad discretion in conservatorship

matters in order to serve the best interests of the children in a suit affecting the parent-child relationship. The trial court did not abuse its discretion by granting to the grandparents certain rights and duties associated with joint managing conservatorship despite the grandparents' pleading deficiencies.

In passing, Clark argues that courts should apply due process precepts in suits affecting the parent-child relationship. She does not clarify her due-process argument and cites only *Avila v. Avila*, 843 S.W.2d 280, 281-82 (Tex.App.--El Paso 1992, no writ), a case dealing with service of citation. She makes no allegations about defective service. Due process does require that a litigant be given fair notice of the issues that will be decided in the litigation. *See Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *Macalik*, 13 S.W.3d at 45. However, because the best interests of the children must be the focus of the trial court when determining conservatorship issues, "fair notice is afforded when the pleadings generally invoke the court's jurisdiction over custody and control of the children." *Macalik*, 13 S.W.3d at 45. Clark's rights to due process were not violated because the issue of conservatorship of the children was contested and was squarely before the trial court. We overrule Beverly Clark's first appellate issue.

In Clark's second appellate issue, she complains the trial court abused its discretion by appointing more than two parties joint managing conservators. Joint managing conservatorship means the sharing of the rights, privileges, duties, and powers of a parent by two parties, ordinarily the parents, even if the court awards to one party the exclusive power to make certain

decisions.  *See* TEX.FAM.CODE ANN. §14.021(b).[4]  Therefore, she argues, the statute prohibits more than two joint managing conservators.

Even though we have found no case in which an appellate court has specifically considered the issue of the number of managing conservators, trial courts have named more than two joint managing conservators.  Often those cases involve grandparents acting as joint managing conservators with one parent.  *See Brook v. Brook*, 881 S.W.2d 297 (Tex. 1994); *Connors v. Connors*, 796 S.W.2d 233 (Tex.App.--Fort Worth 1990, writ denied).

The language Clark cites seems more like a general description of legislative intent with respect to the powers and duties of joint managing conservators, rather than a specific prohibition of more than two joint managing conservatives.  The trial court did not abuse its discretion by appointing more than two joint managing conservators.

Clark also argues that Section 153.372(a) of the post-1995 Family Code, which says "A nonparent . . . appointed as a joint managing conservator may serve in that capacity with either another nonparent or with a parent of the child," requires no more than two managing conservators.  The issue is not before us because the cited language is not present in the pre-1995 Family Code[5], which governs this action.  We express no opinion on whether Clark's interpretation of Section 153.372(a) of the post-1995 Family Code is correct.  We overrule Clark's second appellate issue.

In its decree, the trial court ordered that if Glenn Funk and Clark were not able to agree

---

[4] Act of May 23, 1987, 70th Leg., R.S., ch. 744, § 6, 1987 TEX.GEN.LAWS 2666, 2668-69 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 101.016 (Vernon 1996)).

[5] *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 766, § 1, 1993 TEX.GEN.LAWS 2989 (repealed 1995)(TEX.FAM.CODE ANN. § 14.01(a)).

about their rights under the decree with respect to joint managing conservatorship, that Dorothy and John Funk, the boys' grandparents, would have controlling say and would make the final decision. In her third appellate issue, Clark complains that trial court abused its discretion by giving the grandparents such authority.

Clark argues that a court cannot exclude the parents from raising their children unless the court finds that the parents' raising of the children would significantly impair the children's physical health or emotional development. *See* TEX.FAM.CODE ANN. § 14.01(b)(1).[6] The cited code section requires the court to appoint a parent sole managing conservator or both parents joint managing conservators unless the court finds such an appointment would not be in the child's best interest because such appointment would significantly impair the child's physical health or emotional well being. Of course, since the court appointed both parents joint managing conservators, albeit joint managing conservators with the paternal grandparents it is questionable whether the statute even applies.

Clark nevertheless argues that granting such power to the grandparents effectively deprives her of joint managing conservatorship powers and effectively allows the grandparents to modify the conservatorship order without a court hearing. We disagree. Very recently, the U.S. Supreme Court touched upon the core issue that Clark's argument touches upon in *Troxel v. Granville*, 120 S.Ct. 2054 (June 5, 2000). There, the Court considered a Washington State statute that permitted any person to petition for visitation rights whenever such visitation may serve a child's best interest. The Court found that statute to be overly broad and that by failing to

---

[6] *See* Act of May 26, 1989, 71st Leg., R.S., ch. 370, § 1, 1989 TEX.GEN.LAWS 1461 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 153.131 (Vernon Supp. 2000)).

require a threshold showing of harm or potential harm to the child in addition to best interest of the child unconstitutionally infringed upon a parent's fundamental right to raise their children. The Texas statute upon which Clark bases her claim is, unlike the Washington visitation statute in *Troxel,* very limited in its application and does not simply depend upon a best interest of the child finding. Moreover, and again unlike the situation in *Troxel*, the record before us clearly reflects that the trial court's order was based, not merely on its singular determination of the best-interest question, but was firmly founded upon special factors that justify the imposition of a tie breaking role for the grandparents that imposes a limited restriction of both parent's fundamental right to make decisions concerning the raising of their children.

A parent appointed conservator of a child has certain rights, privileges, duties, and powers, unless a written finding by the court determines it would not be in the best interest of the child. *See* TEX.FAM.CODE ANN. § 14.02(b).[7] When a court appoints both parents conservators, the court shall specify the rights, privileges, duties, and powers that are to be retained by both parents, that are to be exercised jointly, and that are to be exercised exclusively by one parent. *See* TEX.FAM.CODE ANN. § 14.02(a).[8]

The court allocated the parental rights, privileges, duties, and powers between Clark and Glenn Funk and his parents, for the most part treating Glenn Funk and his parents as a unit. For example, no rights, privileges, duties, or powers are to be exercised exclusively by Glenn Funk but rather exclusively by Glenn Funk and his parents, John and Dorothy Funk.

---

[7] *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 766, § 2, 1993 TEX.GEN.LAWS 2989, 2990- 91 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 153.072 (Vernon 1996)).

[8] *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 766, § 2, 1993 TEX.GEN.LAWS 2989, 2990 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 153.071 (Vernon 1996)).

We do not view the court's actions as depriving Clark of her managing conservatorship powers. The court had the power to grant certain rights, privileges, duties, and powers exclusively to Glenn Funk but did not. Instead, the court attempted to allocate the rights, privileges, duties, and powers between Clark and the Funks and gave the grandparents controlling say only when Clark and Glenn Funk could not reach agreement if disputes arise. The court further found that such an arrangement was in the best interest of the boys. The trial court did not abuse its discretion. We overrule Clark's third appellate issue.

In her fourth appellate issue, Clark argues that she introduced sufficient credible evidence that Glenn Funk committed acts constituting physical abuse. Therefore, she argues, the trial court abused its discretion in naming Glenn Funk joint managing conservator. In her fifth appellate issue, she complains, relying on the violence allegations, the trial court abused its discretion by not naming her sole managing conservator.

The court may not appoint joint conservators if a party presents credible evidence of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or any child. *See* TEX.FAM.CODE ANN. § 14.021(h).[9] Generally when a fact finder is presented with conflicting evidence, it may believe one witness and disbelieve others. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). The Texas Supreme Court has stated that factors such as provocation or which party initiated a confrontation are not relevant factors in determining whether there exists a history or pattern of abuse. *See Pena v. Pena*, 8 S.W.3d 639 (Tex. 1999)(per curiam).

---

[9] *See* Act of May 23, 1987, 70th Leg., R.S., ch. 744, § 6, 1987 TEX.GEN.LAWS 2666, 2669 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 153.004(b)(Vernon Supp. 2000)).

Clark testified that on March 10, 1995, when she was preparing to take the children to visit Glenn Funk's parents in Kansas, Glenn Funk began searching the van. He searched the luggage of Melissa Johnson, his stepdaughter and Clark's daughter by a previous marriage. He found certain files, which included the boys' birth certificates, and removed them. Glenn Funk testified that he was afraid that Clark was attempting to flee and establish out-of-state residency with the children. Clark testified that she tried to prevent Glenn Funk from removing the files. Clark testified that Glenn Funk grabbed her around the throat, held her off the ground, and carried her with her feet off the ground, and slammed her against the fence. She further testified that he hit her in the solar plexus or diaphragm, knocking her out of breath and hurting her. She testified that he dropped his knee twice into her breastbone with the full weight of his body. Glenn Funk weighs between 250 and 270 pounds, and Clark weighs approximately 100 pounds. She testified that she sustained no injuries other than redness of her skin for a few hours. Glenn Funk acknowledges he searched the van and found some folders, but testified that Clark began the physical confrontation by slamming the car door on him when he found the files. He denied grabbing his wife and carrying her by the throat and denied slamming her into the fence. He did say that after she bit his hand, he "did a palm heel strike roughly that way into her solar plexis."

Clark also testified that around Thanksgiving 1994 when she and Glenn Funk were in bed, he gave her a sharp kick in the ribs and that he continued kicking her until she finally fell off the bed and onto the floor. Glenn Funk testified, however, that she kicked him first, in the side when he refused to turn out the light, that she continued to try to kick him, and that he pushed her to the other side of the bed.

About another incident, Clark testified that in August or September 1994 after she

showed Glenn Funk that Matthew was using a left-handed spoon, Glenn Funk grabbed Clark by the head and shoved her out of her chair so that the chair tipped.

She also testified that Glenn Funk repeatedly called her daughter, Melissa, stupid and dumb with regard to her math homework and repeatedly would pull the chair out from under Melissa while she was sitting at her desk, thus causing her to fall to the floor. She said that Glenn Funk would hold her daughter down on the floor by her wrists while he was over her on all fours yelling in her face.

Aside from "palm strike" during the van incident and the "pushing" during the bed incident, Glenn Funk denied any physical abuse of his wife, stepdaughter, or sons.

Clark, citing *Nixon v. Armstrong*, 38 Tex. 296, 297 (1873), argues that the statute simply requires credible evidence of spousal or child abuse and does not require the court to actually believe the evidence. She says that so long as she introduce credible evidence -- she argues this means legally competent or admissible evidence -- the court may not appoint Glenn Funk managing conservator. She further argues that the Legislature intends the non-violent rather than the violent parent be appointment managing conservator. *See Lewelling v. Lewelling*, 796 S.W.2d 164, 168 (Tex. 1990).

*Nixon v. Armstrong*, a case dealing with whether an attesting witness to a will is competent, or credible, is distinguishable. The Legislature in enacting Section 14.021(h) did not intend to take from the fact finder the power to make credibility determinations. Were we to follow Clark's argument, then any time a spouse made an allegation of a history of abuse, the trial court would be prevented from naming the target of the allegation managing conservator. Glenn Funk testified that Clark slammed the car door on him, that she bit his hand, and that she

kicked him in the side. Arguably, following Clark's logic, the trial court also could not name Clark managing conservator.

Credible evidence is more than merely admissible evidence. It is evidence the trier of fact believes. *Cf. Winkles v. State*, 634 S.W.2d 289, 295 (Tex.Crim.App. 1981)(for purposes of probable cause determination, affiant's statement is "credible" when it is "reliable" and "dependable"); *Chance v. Chance*, 911 S.W.2d 40, 74 (Tex.App.--Beaumont 1995, writ denied)(court finds evidence inadmissible; even if admissible, not credible; thus, credibility and admissibility determinations separate).

We cannot sustain Clark's issue unless we find that the trial court abused its discretion in deciding this issue. A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *See E.I. du Pont Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Skepnek v. Mynatt*, 8 S.W.3d 377, 380 (Tex.App.--El Paso 1999, pet. denied). The test is not whether, "'in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action.'" *Robinson*, 923 S.W.2d at 558. A reviewing court cannot conclude that a trial court abused its discretion if, in the same circumstances, it would have ruled differently or if the trial court committed a mere error in judgment. *See Skepnek*, 8 S.W.3d at 380. It was within the discretion of the trial court to make a decision on the credibility of the witnesses. Upon review of this record, we cannot conclude the trial court abused its discretion.

In connection with the abuse allegations, Clark also complains the trial court erred in excluding the testimony of her daughter, Melissa Johnson. At trial, Clark offered the testimony of Carla Brechter, a neighbor. Glenn Funk's attorney objected on grounds that the witness had not been identified in discovery. The court sustained the objection. Later, when Clark made her

offer of proof, she recorded the testimony of Brechter and Melissa Johnson. Clark did not give the court the opportunity to admit Melissa Johnson's testimony corroborating her mother's testimony about Glenn Funk's treatment of his stepdaughter. Just as a court's ruling on a motion in limine does not preserve a complaint about the exclusion of evidence, neither does an offer of proof preserve a complaint when the proponent of the evidence never offers the evidence to the trial court. Clark on appeal says the evidence was excluded because even though Melissa was listed in discovery as a fact witness, the substance of her testimony was not disclosed.

To preserve error concerning the exclusion of evidence, the complaining party must offer the evidence and secure an adverse ruling from the court. *See Johnson v. Garza*, 884 S.W.2d 831, 834 (Tex.App.--Austin 1994, writ denied); *Parker v. Parker*, 593 S.W.2d 857, 860 (Tex.Civ.App.--Houston [1st Dist] 1980, no writ); *Roberts v. Tatum*, 575 S.W.2d 138, 144 (Tex.Civ.App.--Corpus Christi 1978, writ ref'd n.r.e.). The record does not reflect that Melissa's testimony was ever offered as evidence. The trial court was never given an opportunity to rule on the admission of the evidence. There exists nothing for our review. We overrule Clark's fourth and fifth appellate issues.

In her sixth appellate issue, Clark complains the court abused its discretion by failing to name her the boys' primary caretaker. If a child receives or qualifies for assistance under Chapter 31 or 32 or Title 4 or 5 of the Human Resources Code, at the request of either party, the court shall designate a parent as the primary caretaker and the home of that parent as the primary home of the child for the purpose of receiving public assistance on behalf of the child. If one parent receives public assistance on behalf of the child, the court shall designate that parent as the primary caretaking parent unless the court finds that it is in the child's best interest to designate

the other parent. *See* TEX.FAM.CODE ANN. § 14.021(i).[10]

Clark argues that she received public assistance on behalf of the boys, in that she lived in Section 8 housing. *See* 42 U.S.C.A. § 1437a (West 1994 & Supp. 2000). Thus, she contends the trial court should have named her primary caretaker and named her home as the boys' primary home.

Under Section 14.021(i) of the Family Code, the trial court must designate a parent as primary caretaker and the home of that parent as the primary home of the child for the purpose of receiving public assistance on behalf of the child at the request of either party. Clark has not shown in the record that she asked the court to be named primary caretaker or asked that her home be named primary home for the boys. Clark did not comply with Section 14.021(i) and thus did not trigger the court's duty to designate a primary caretaker. The trial court did not abuse its discretion in failing to designate Clark primary caretaker or to designate her home as the boys' primary home. Even if we were to assume Clark had asked the court to designate her as primary caretaker, the trial court would not have abused its discretion in failing to do so.

Section 14.021(i) deals with assigning responsibility for child care when a parent is receiving public assistance. Here, Clark was at the time of the divorce receiving some public assistance. The court found she was making or was capable of making $955 gross income. Glenn Funk, on the other hand, testified he had an annual salary of $63,000. His parents, John and Dorothy Funk, were living with their son and were assisting in child care. The evidence showed that Matthew had significant disabilities and needed special care. The trial court would

_____

[10] *See* Act of May 23, 1987, 70th Leg., R.S., ch. 744, § 6, 1987 TEX.GEN.LAWS 2666, 2669, *repealed by* Act of May 16, 1997, 75th Leg., R.S., ch. 561, § 30, 1997 TEX.GEN.LAWS 1983, 1994.

not have abused its discretion in designating Glenn Funk and his parents the boys' primary caretakers. We overrule Clark's sixth appellate issue.

In her seventh appellate issue, Clark complains the trial court abused its discretion in finding that she was capable of making $955 a month gross income and in ordering her to pay child support of $44 a week, $176 a month.

Clark advances three arguments. First, she maintains the evidence shows the court should have named her sole managing conservator and ordered Glenn Funk to pay child support. Second, that the trial court failed to set out the statutory findings in regard to setting child support. And, third, that the trial evidence rebutted the presumption that the statutory child-support guidelines were in the best interest of the children.

We will not disturb a court's child support order unless the complaining party shows the order constituted a clear abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). The court has the authority to order either parent or both parents to pay child support. *See* TEX.FAM.CODE ANN. § 14.05(a).[11]

Clark argues that the trial court abused its discretion by not naming her sole managing conservator and by not ordering Glenn Funk to pay child support. In this section, she makes no new arguments but incorporates by reference the arguments made in the preceding appellate complaints. The trial court did not abuse its discretion in its conservatorship orders and did not abuse its discretion in requiring Clark to pay child support.

She further argues the trial court failed to set out the statutory findings in regard to setting

---

[11] *See* Act of July 14, 1989, 71st Leg., 1st C.S., ch. 25, § 13, 1989 TEX.GEN.LAWS 74, 78 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 154.001 (Vernon Supp. 2000)).

-15-

child support. TEX.FAM.CODE ANN. § 14.057(a), (b).[12]

Generally, under Section 14.057(a), when a court sets child support, where support is contested, on written request made or filed with the court not later than ten days after the date of the hearing or an oral request made in open court during the hearing the court shall state the following:

(1)    the amount of net resources available to the obligor per month is $_____;
(2)    the amount of net resources available to the obligee per month is $ _____;
(3)    the amount of child support payments per month that is computed if Section 14.055, Family Code [Guidelines: Amount Ordered], is applied is $ _____;
(4)    the percentage applied to the obligor's net resources for child support by the actual order rendered by the court is _____ %; and if applicable,
(5)    the specific reasons that the amount of support per month ordered by the court varies from the amount computed by applying the percentage guidelines pursuant to Section 14.055, Family Code, are: _____.

Under Section 14.057(b), when court-ordered child support varies from the amount computed by applying the percentage guidelines contained in Section 14.055 of the code, the court shall find that the application of the child support guidelines would be unjust or inappropriate and shall state the following in the child support order:

(1)    the amount of net resources available to the obligor per month is $_____;
(2)    the amount of net resources available to the obligee per month is $_____;
(3)    the amount of child support payments per month that is computed if Section 14.055, Family Code, is applied is $_____;
(4)    the percentage applied to the obligor's net resources for child support by the actual order rendered by the court is _____%; and
(5)    the specific reasons that the amount of support per month ordered by the court varies from the amount computed by applying the percentage guidelines pursuant to Section 14.055, Family Code, are: _____.

Clark filed a general request for findings of fact and conclusions of law pursuant to Rule

---

[12] *See* Act of May 26, 1993, 73rd Leg., R.S., ch. 970, § 7, 1993 TEX.GEN.LAWS 4212, 4233 (repealed 1995)(current version at TEX.FAM.CODE ANN. 154.130 (Vernon 1996)).

297 of the Rules of Civil Procedure which did not address any particular issue in the case. Pursuant to this request, the trial court made findings of fact that included the finding that Clark had the ability to earn $955 in gross income per month, resulting in $762.67 in net resources. The trial court claimed it was applying a child support rate of 25 percent, and ordered Clark to pay $44 a week in child support.[13]

We believe Clark has waived any complaint as to the order requiring her to pay child support because she never filed a request with the trial court pursuant to Section 14.057(a) of the Family Code, or a request for additional findings of fact and conclusions of law concerning the support issue pursuant to Rule 298 of the Rules of Civil Procedure.[14] Although Section 14.057(a) specifically provides that a party may file a request with the trial court without regard to Rules 296 through 299 of the Rules of Civil Procedure, Clark could have also utilized the Rules of Civil Procedure to require the trial court to set out its findings regarding child support. *See Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). Because she utilized neither procedure, she has waived the complaint upon appeal.

Clark also complains the trial evidence rebutted the presumption that the statutory child-support guidelines were in the best interest of the children. Courts presume that child support payments that follow the statutory guidelines are reasonable. A party may rebut that

---

[13] The trial court erred in concluding that 25 percent of Clark's net resources were $44 a week. The amount should have been $48 a week. We believe this difference is *de minimis*, and should not operate to overturn the trial court's order.

[14] Clark did file a request for additional findings of fact and conclusions of law, but the findings specifically addressed the issue of the trial court's domestic violence findings.

presumption. *See* TEX.FAM.CODE ANN. § 14.05(j).[15]

In applying the guidelines for child support, the trial court shall be guided by the guidelines. The court may, however, in rendering its final determination of the support amount, set the amount of child support either within or outside the range recommended in Section 14.055 of the code if relevant factors other than the guidelines justify a variance. *See* TEX.FAM.CODE ANN. § 14.054.[16]

In making its determination, under Section 14.054, the court shall consider all relevant factors, including but not limited to the amount of the obligee's net resources; the age and needs of the child; child care expenses incurred by either party in order to maintain gainful employment; whether either party has the managing conservatorship or actual physical custody of another child; the amount of child support actually and currently being paid or received by either party under another child support order; the expenses for a son or daughter for education beyond secondary school; whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity; the amount of other deductions from the wage or salary income and from other compensation for personal services of the parties; provision for health care insurance and payment of uninsured medical expenses; special or extraordinary educational, health care, or other expenses or the parties or of the child; positive or negative cash flow from any real or personal property and assets, including a business and investments; debt or debt service assumed by either party; and any other reason or reasons

---

[15] Act of July 14, 1989, 71st Leg. 1st C.S., Ch. 25, §13, 1989 TEX.GEN.LAWS 74, 78 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 154.122 (Vernon 1996)).

[16] Act of May 5, 1989, 71st Leg., R.S., ch. 617, § 6, 1989 TEX.GEN.LAWS 2030, 2037-38 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 154.123 (Vernon 1996)).

consistent with the best interest of the child, taking into consideration the circumstances of the parents.

Clark argues, citing post-1995 Family Code Section 154.123(b), the court must consider these enumerated factors when deciding whether ordering support under the statutory guidelines would be unjust or inappropriate under the circumstances. Clark advances three arguments that she claims rebut the presumption that the support ordered was appropriate.

First, she argues that under Section 154.123(b)(4), that trial court must consider that amount of time, access to, and possession of the children. She argues that she is scheduled to have possession of the boys between twelve and fifteen days each month and that forcing her to pay some $176 a month in support will allow her only to provide bare necessities to the boys during those times the boys are with her. There is no exact equivalent to this section in the pre-1995 Family Code, but Subsection 4 of Section 14.054 states that the trial court shall consider whether either party has the managing conservatorship or actual physical custody of the child.[17] Clark fails to support her assertion that the boys will only be afforded the bare necessities when they are with her with any other evidence or information.

Second, Clark argues the court is to consider the ability of the parents to contribute to the children's support. *See* TEX.FAM.CODE ANN. § 154.123(b)(2). This provision is equivalent to former Section 14.052(b)(2) of the Family Code.[18] Clark's argument centers on Glenn Funk's ability to provide for the children. In her brief, she claims that Glenn Funk testified that when he

---

[17] *See* Act of May 5, 1989, 71st Leg., R.S., ch. 617, § 6, 1989 TEX.GEN.LAWS 2030, 2037-38 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 154.123 (Vernon 1996)).

[18] *See* Act of May 5, 1989, 71st Leg., R.S., ch. 617, § 6, 1989 TEX.GEN.LAWS 2030, 2036 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 154.123(b)(2)(Vernon 1996)).

was sole support for the family of five, after paying all expenditures, he had about $600 a month left from his paycheck. She does not indicate where in the record this testimony may be found, and we have not located the testimony in the record. After the divorce, she argues Glenn Funk's expenses will be reduced by two-fifths, accounting for Clark and Clark's daughter, without a reduction in his income. Moreover, the decree ordered Clark to take the debt on the community's Nissan and Dodge Caravan automobiles. Clark fails to explain why Glenn Funk's apparently more ample resources should negate her obligation to pay child support.

Third, Clark contends the court was to consider child care expenses in determining child support. *See* TEX.FAM.CODE ANN. § 154.123(b)(6). This provision was also in the pre-1995 Family Code, in Section 14.054(3).[19] Glenn Funk's parents, both retired, live with their son and provide transportation and child care at no cost to their son. Clark argues that because Funk is not paying for child care, she should not be obligated to pay any support for the care of her sons.

The court set Clark's support obligation within applicable statutory guidelines. *See* TEX.FAM.CODE ANN. § 14.055(b).[20] Matthew's developmental problems require therapy and constant attention. Clark has not provided any evidence or argument to support her contention that the trial abused its discretion in ordering her to pay child support. Her contentions that Glenn Funk's more favorable financial situation should negate her obligation to provide support for her children are not supported by the record. Glenn Funk supports himself and the two boys on a gross salary of $63,000 a year. He must provide a residence for the children, and

---

[19] *See* Act of May 5, 1989, 71st Leg., R.S., ch. 617, § 6, 1989 TEX.GEN.LAWS 2030, 2037-38 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 154.123 (Vernon 1996)).

[20] *See* Act of May 25, 1993, 73rd Leg., R.S., ch. 798, § 5, 1993 TEX.GEN.LAWS 3169, 3171 (repealed 1995)(current version at TEX.FAM.CODE ANN. § 154.125 (Vernon 1996)).

presumably provides for most of the children's material needs.  Matthew is developmentally disabled, requires therapy, and will presumably continue to require therapy and support for most of his life.  Clark has not rebutted the presumption that the statutory guidelines are unreasonable. Nor has she shown the trial court's support decision was not in the boys' best interest.  We overrule Clark's seventh appellate issue and affirm the judgment of the trial court.

August 24, 2000

DAVID WELLINGTON CHEW, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)