COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

BEVERLY SUE CLARK,                                  )
) No. 08-97-00634-CV
                                    Appellant,                        )
) Appeal from the
v.                                                                          )
) 256th District Court
GLENN EUGENE FUNK,                                  )
) of Dallas County, Texas
                                    Appellee.                         )
) (TC# 95-04793-Z)
)


O P I N I O N

            Beverly Sue Clark and Glenn Eugene Funk were married June 16, 1990, and had two
children of the marriage, Michael Thomas Funk, born April 28, 1991, and Matthew Stuart Funk,
born December 1, 1992. The trial court entered a divorce decree and conservatorship and
support orders on July 15, 1997, and named Clark, Glenn Funk, and Glenn Funk’s parents, John
William “Bill” Funk and Dorothy Funk, joint managing conservators. We affirm the judgment
of the trial court.
            As a preliminary matter, Appellee Glenn Funk argues that Appellant Clark is estopped to
appeal the trial court’s decree regarding conservatorship and child support.
            Glenn Funk argues that he and Clark entered into a mediated agreement that meets the
requirements of Tex.Fam.Code Ann. §153.0071(e)(Vernon Supp. 2000) and Tex.R.Civ.P. 11
and that Clark in the mediated agreement agreed to the terms of the divorce decree.
            The court entered the final decree and the possession and conservatorship orders on July
15, 1997. The mediated agreement was not dated but was filed September 9, 1997. In the
agreement, the parties “approve[d] the form of the Decree of Divorce” and agreed that where the
decree and the agreement conflict, the agreement controls. The agreement covers certain
ancillary matters and details not covered by the decree and does not contradict the decree with
respect to conservatorship or child support.
            The plain language of the agreement limits Clark’s approval of the decree to form only,
not to substance. Nowhere does Clark approve the substance of the conservatorship or support
orders. Although Clark agrees that she will pay $44 a week of child support through the
Guardian Ad Litem’s office, we construe this not as acquiescence to the amount of support but
rather an agreement as to the manner of payment. The mediation agreement does not prevent
Clark from appealing the decree.
            Glenn Funk also argues that Clark is estopped under the principle that a party who
accepts the benefits of a judgment is estopped to challenge the judgment. See Carle v. Carle,
149 Tex. 469, 234 S.W.2d 1002, 1004 (1950). He argues that Clark accepted the benefit of the
judgment by making child support payments. We do not construe payment of court-ordered child
support as receiving a judgment benefit.
            He further argues that Clark is estopped under the principle that where a party voluntarily
pays a judgment, the party waives the right to appeal. See Elkins v. Vincik, 437 S.W.2d 49, 51-2
(Tex.Civ.App.--Austin 1969, no writ). He argues that Clark voluntarily agreed to pay more child
support than the court ordered. The trial court, Glenn Funk argues, has no jurisdiction to enforce
the support order by contempt while the order is on appeal. Therefore, Glenn Funk argues,
Clark’s acquiescence was voluntary. Glenn Funk cites no relevant authority. Also the record
does not support his argument. He cites that portion of the final divorce decree where the court
sets Clark’s support payment. He further cites another version of the final decree listing higher
support amounts for Clark. The latter version appears to be draft version of the final decree and
is signed by neither Clark nor her attorney. This does not support his assertion that Clark agreed
to higher payments than those ordered by the court. Clark is not estopped to appeal the decree
and the possession and conservatorship orders. As such, we will consider her appellate issues in
the order she raises them in her brief.
            Clark, in several appellate issues, complains the trial court abused its discretion in its
conservatorship order. She does not complain about the order generally, but rather complains
about specific issues.
            Glenn Funk filed his original divorce petition March 21, 1995. The 1995 Family Code
amendments took effect April 20, 1995, and for the most part, do not apply to cases then
pending.


 We, therefore, cite and apply the Family Code as it existed before the 1995
amendments.
            In determining questions of managing conservatorship, possession, and support of and
access to a child, the court shall always consider first the best interest of the child. See
Tex.Fam.Code Ann. § 14.07(a).


 In determining the best interest of the child, the court shall
consider the parents’ circumstances. See Tex.Fam.Code Ann. § 14.07(b).


 The trial judge faces
the parties and their witnesses, observes their demeanor, and has the opportunity to evaluate the
claims made by each of them. The trial judge, therefore, is in a better position than are we to
determine the child’s best interest. See In the Matter of the Marriage of D.M.B. and R.L.B., 798
S.W.2d 399, 405 (Tex.App.--Amarillo 1990, no writ). The trial court has broad discretion in
determining what is in the best interest of the child in conservatorship matters, and we will not
reverse its decision absent an abuse of discretion. See Eason v. Eason, 860 S.W.2d 187, 191
(Tex.App.--Houston [14th Dist.] 1993, no writ); Thompson v. Thompson, 827 S.W.2d 563, 566-67 (Tex.App.--Corpus Christi 1992, writ denied). A trial court does not abuse its discretion
when it bases its decision on conflicting evidence. See Griffin Indus., Inc. v. The Honorable
Thirteenth Court of Appeals, 934 S.W.2d 349, 357 (Tex. 1996); Kirkpatrick v. Memorial Hosp.
of Garland, 862 S.W.2d 762, 776 (Tex.App.--Dallas 1993, writ denied).
            John and Dorothy Funk, the paternal grandparents of Michael and Matthew Funk, sought
only possessory conservatorship in their pleadings. In her first appellate issue, Clark argues that
the trial court abused its discretion by appointing John and Dorothy Funk joint managing
conservators of the two boys. She says the decree and the orders must conform to the pleadings. 
We disagree.
            The technical rules of practice and pleadings are of little importance in determining
conservatorship issues. See Leithold v. Plass, 413 S.W.2d 698, 701 (Tex. 1967); In re P.M.B., 2
S.W.3d 618, 624 (Tex.App.--Houston [14th Dist.] 1999, no pet.); Baker v. Ericsson, 689 S.W.2d
492, 494 (Tex.App.--El Paso 1985, no writ); C. v. C., 534 S.W.2d 359, 361 (Tex.Civ.App.--Dallas 1976, writ dism’d). In cases that involve the parent-child relationship, the best interests of
the child or children are of paramount importance. See In re Macalik, 13 S.W.3d 43, 45
(Tex.App.--Texarkana 1999, no pet. h.). The trial court has broad discretion in conservatorship
matters in order to serve the best interests of the children in a suit affecting the parent-child
relationship. The trial court did not abuse its discretion by granting to the grandparents certain
rights and duties associated with joint managing conservatorship despite the grandparents’
pleading deficiencies.
            In passing, Clark argues that courts should apply due process precepts in suits affecting
the parent-child relationship. She does not clarify her due-process argument and cites only Avila
v. Avila, 843 S.W.2d 280, 281-82 (Tex.App.--El Paso 1992, no writ), a case dealing with service
of citation. She makes no allegations about defective service. Due process does require that a
litigant be given fair notice of the issues that will be decided in the litigation. See Cunningham v.
Parkdale Bank, 660 S.W.2d 810, 813 (Tex. 1983); Macalik, 13 S.W.3d at 45. However, because
the best interests of the children must be the focus of the trial court when determining
conservatorship issues, “fair notice is afforded when the pleadings generally invoke the court’s
jurisdiction over custody and control of the children.” Macalik, 13 S.W.3d at 45. Clark’s rights
to due process were not violated because the issue of conservatorship of the children was
contested and was squarely before the trial court. We overrule Beverly Clark’s first appellate
issue.
            In Clark’s second appellate issue, she complains the trial court abused its discretion by
appointing more than two parties joint managing conservators. Joint managing conservatorship
means the sharing of the rights, privileges, duties, and powers of a parent by two parties,
ordinarily the parents, even if the court awards to one party the exclusive power to make certain
decisions. See Tex.Fam.Code Ann. §14.021(b).


 Therefore, she argues, the statute prohibits
more than two joint managing conservators.
            Even though we have found no case in which an appellate court has specifically
considered the issue of the number of managing conservators, trial courts have named more than
two joint managing conservators. Often those cases involve grandparents acting as joint
managing conservators with one parent. See Brook v. Brook, 881 S.W.2d 297 (Tex. 1994);
Connors v. Connors, 796 S.W.2d 233 (Tex.App.--Fort Worth 1990, writ denied).
            The language Clark cites seems more like a general description of legislative intent with
respect to the powers and duties of joint managing conservators, rather than a specific prohibition
of more than two joint managing conservatives. The trial court did not abuse its discretion by
appointing more than two joint managing conservators.
            Clark also argues that Section 153.372(a) of the post-1995 Family Code, which says “A
nonparent . . . appointed as a joint managing conservator may serve in that capacity with either
another nonparent or with a parent of the child,” requires no more than two managing
conservators. The issue is not before us because the cited language is not present in the pre-1995
Family Code


, which governs this action. We express no opinion on whether Clark’s
interpretation of Section 153.372(a) of the post-1995 Family Code is correct. We overrule
Clark’s second appellate issue.
            In its decree, the trial court ordered that if Glenn Funk and Clark were not able to agree
about their rights under the decree with respect to joint managing conservatorship, that Dorothy
and John Funk, the boys’ grandparents, would have controlling say and would make the final
decision. In her third appellate issue, Clark complains that trial court abused its discretion by
giving the grandparents such authority.
            Clark argues that a court cannot exclude the parents from raising their children unless the
court finds that the parents’ raising of the children would significantly impair the children’s
physical health or emotional development. See Tex.Fam.Code Ann. § 14.01(b)(1).


 The cited
code section requires the court to appoint a parent sole managing conservator or both parents
joint managing conservators unless the court finds such an appointment would not be in the
child’s best interest because such appointment would significantly impair the child’s physical
health or emotional well being. Of course, since the court appointed both parents joint managing
conservators, albeit joint managing conservators with the paternal grandparents it is questionable
whether the statute even applies.
            Clark nevertheless argues that granting such power to the grandparents effectively
deprives her of joint managing conservatorship powers and effectively allows the grandparents to
modify the conservatorship order without a court hearing. We disagree. Very recently, the U.S.
Supreme Court touched upon the core issue that Clark’s argument touches upon in Troxel v.
Granville, 120 S.Ct. 2054 (June 5, 2000). There, the Court considered a Washington State
statute that permitted any person to petition for visitation rights whenever such visitation may
serve a child’s best interest. The Court found that statute to be overly broad and that by failing to
require a threshold showing of harm or potential harm to the child in addition to best interest of
the child unconstitutionally infringed upon a parent’s fundamental right to raise their children. 
The Texas statute upon which Clark bases her claim is, unlike the Washington visitation statute
in Troxel, very limited in its application and does not simply depend upon a best interest of the
child finding. Moreover, and again unlike the situation in Troxel, the record before us clearly
reflects that the trial court’s order was based, not merely on its singular determination of the best-interest question, but was firmly founded upon special factors that justify the imposition of a tie
breaking role for the grandparents that imposes a limited restriction of both parent’s fundamental
right to make decisions concerning the raising of their children.
            A parent appointed conservator of a child has certain rights, privileges, duties, and
powers, unless a written finding by the court determines it would not be in the best interest of the
child. See Tex.Fam.Code Ann. § 14.02(b).


 When a court appoints both parents conservators,
the court shall specify the rights, privileges, duties, and powers that are to be retained by both
parents, that are to be exercised jointly, and that are to be exercised exclusively by one parent. 
See Tex.Fam.Code Ann. § 14.02(a).



            The court allocated the parental rights, privileges, duties, and powers between Clark and
Glenn Funk and his parents, for the most part treating Glenn Funk and his parents as a unit. For
example, no rights, privileges, duties, or powers are to be exercised exclusively by Glenn Funk
but rather exclusively by Glenn Funk and his parents, John and Dorothy Funk. 
            We do not view the court’s actions as depriving Clark of her managing conservatorship
powers. The court had the power to grant certain rights, privileges, duties, and powers
exclusively to Glenn Funk but did not. Instead, the court attempted to allocate the rights,
privileges, duties, and powers between Clark and the Funks and gave the grandparents
controlling say only when Clark and Glenn Funk could not reach agreement if disputes arise. 
The court further found that such an arrangement was in the best interest of the boys. The trial
court did not abuse its discretion. We overrule Clark’s third appellate issue.
            In her fourth appellate issue, Clark argues that she introduced sufficient credible evidence
that Glenn Funk committed acts constituting physical abuse. Therefore, she argues, the trial
court abused its discretion in naming Glenn Funk joint managing conservator. In her fifth
appellate issue, she complains, relying on the violence allegations, the trial court abused its
discretion by not naming her sole managing conservator.
            The court may not appoint joint conservators if a party presents credible evidence of a
history or pattern of past or present child neglect, or physical or sexual abuse by one parent
directed against the other parent, a spouse, or any child. See Tex.Fam.Code Ann. § 14.021(h).


 
Generally when a fact finder is presented with conflicting evidence, it may believe one witness
and disbelieve others. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). The
Texas Supreme Court has stated that factors such as provocation or which party initiated a
confrontation are not relevant factors in determining whether there exists a history or pattern of
abuse. See Pena v. Pena, 8 S.W.3d 639 (Tex. 1999)(per curiam). 
            Clark testified that on March 10, 1995, when she was preparing to take the children to
visit Glenn Funk’s parents in Kansas, Glenn Funk began searching the van. He searched the
luggage of Melissa Johnson, his stepdaughter and Clark’s daughter by a previous marriage. He
found certain files, which included the boys’ birth certificates, and removed them. Glenn Funk
testified that he was afraid that Clark was attempting to flee and establish out-of-state residency
with the children. Clark testified that she tried to prevent Glenn Funk from removing the files. 
Clark testified that Glenn Funk grabbed her around the throat, held her off the ground, and
carried her with her feet off the ground, and slammed her against the fence. She further testified
that he hit her in the solar plexus or diaphragm, knocking her out of breath and hurting her. She
testified that he dropped his knee twice into her breastbone with the full weight of his body. 
Glenn Funk weighs between 250 and 270 pounds, and Clark weighs approximately 100 pounds. 
She testified that she sustained no injuries other than redness of her skin for a few hours. Glenn
Funk acknowledges he searched the van and found some folders, but testified that Clark began
the physical confrontation by slamming the car door on him when he found the files. He denied
grabbing his wife and carrying her by the throat and denied slamming her into the fence. He did
say that after she bit his hand, he “did a palm heel strike roughly that way into her solar plexis.”
            Clark also testified that around Thanksgiving 1994 when she and Glenn Funk were in
bed, he gave her a sharp kick in the ribs and that he continued kicking her until she finally fell off
the bed and onto the floor. Glenn Funk testified, however, that she kicked him first, in the side
when he refused to turn out the light, that she continued to try to kick him, and that he pushed her
to the other side of the bed.
            About another incident, Clark testified that in August or September 1994 after she
showed Glenn Funk that Matthew was using a left-handed spoon, Glenn Funk grabbed Clark by
the head and shoved her out of her chair so that the chair tipped. 
            She also testified that Glenn Funk repeatedly called her daughter, Melissa, stupid and
dumb with regard to her math homework and repeatedly would pull the chair out from under
Melissa while she was sitting at her desk, thus causing her to fall to the floor. She said that
Glenn Funk would hold her daughter down on the floor by her wrists while he was over her on
all fours yelling in her face. 
            Aside from “palm strike” during the van incident and the “pushing” during the bed
incident, Glenn Funk denied any physical abuse of his wife, stepdaughter, or sons.
            Clark, citing Nixon v. Armstrong, 38 Tex. 296, 297 (1873), argues that the statute simply
requires credible evidence of spousal or child abuse and does not require the court to actually
believe the evidence. She says that so long as she introduce credible evidence -- she argues this
means legally competent or admissible evidence -- the court may not appoint Glenn Funk
managing conservator. She further argues that the Legislature intends the non-violent rather than
the violent parent be appointment managing conservator. See Lewelling v. Lewelling, 796
S.W.2d 164, 168 (Tex. 1990).
            Nixon v. Armstrong, a case dealing with whether an attesting witness to a will is
competent, or credible, is distinguishable. The Legislature in enacting Section 14.021(h) did not
intend to take from the fact finder the power to make credibility determinations. Were we to
follow Clark’s argument, then any time a spouse made an allegation of a history of abuse, the
trial court would be prevented from naming the target of the allegation managing conservator. 
Glenn Funk testified that Clark slammed the car door on him, that she bit his hand, and that she
kicked him in the side. Arguably, following Clark’s logic, the trial court also could not name
Clark managing conservator.
            Credible evidence is more than merely admissible evidence. It is evidence the trier of fact
believes. Cf. Winkles v. State, 634 S.W.2d 289, 295 (Tex.Crim.App. 1981)(for purposes of
probable cause determination, affiant’s statement is “credible” when it is “reliable” and
“dependable”); Chance v. Chance, 911 S.W.2d 40, 74 (Tex.App.--Beaumont 1995, writ
denied)(court finds evidence inadmissible; even if admissible, not credible; thus, credibility and
admissibility determinations separate).
            We cannot sustain Clark’s issue unless we find that the trial court abused its discretion in
deciding this issue. A trial court abuses its discretion if it acts without reference to any guiding
rules or principles. See E.I. du Pont Nemours and Co., Inc. v. Robinson, 923 S.W.2d 549, 558
(Tex. 1995); Skepnek v. Mynatt, 8 S.W.3d 377, 380 (Tex.App.--El Paso 1999, pet. denied). The
test is not whether, “‘in the opinion of the reviewing court, the facts present an appropriate case
for the trial court’s action.’” Robinson, 923 S.W.2d at 558. A reviewing court cannot conclude
that a trial court abused its discretion if, in the same circumstances, it would have ruled
differently or if the trial court committed a mere error in judgment. See Skepnek, 8 S.W.3d at
380. It was within the discretion of the trial court to make a decision on the credibility of the
witnesses. Upon review of this record, we cannot conclude the trial court abused its discretion.
            In connection with the abuse allegations, Clark also complains the trial court erred in
excluding the testimony of her daughter, Melissa Johnson. At trial, Clark offered the testimony
of Carla Brechter, a neighbor. Glenn Funk’s attorney objected on grounds that the witness had
not been identified in discovery. The court sustained the objection. Later, when Clark made her
offer of proof, she recorded the testimony of Brechter and Melissa Johnson. Clark did not give
the court the opportunity to admit Melissa Johnson’s testimony corroborating her mother’s
testimony about Glenn Funk’s treatment of his stepdaughter. Just as a court’s ruling on a motion
in limine does not preserve a complaint about the exclusion of evidence, neither does an offer of
proof preserve a complaint when the proponent of the evidence never offers the evidence to the
trial court. Clark on appeal says the evidence was excluded because even though Melissa was
listed in discovery as a fact witness, the substance of her testimony was not disclosed.
            To preserve error concerning the exclusion of evidence, the complaining party must offer
the evidence and secure an adverse ruling from the court. See Johnson v. Garza, 884 S.W.2d
831, 834 (Tex.App.--Austin 1994, writ denied); Parker v. Parker, 593 S.W.2d 857, 860
(Tex.Civ.App.--Houston [1st Dist] 1980, no writ); Roberts v. Tatum, 575 S.W.2d 138, 144
(Tex.Civ.App.--Corpus Christi 1978, writ ref’d n.r.e.). The record does not reflect that Melissa’s
testimony was ever offered as evidence. The trial court was never given an opportunity to rule
on the admission of the evidence. There exists nothing for our review. We overrule Clark’s
fourth and fifth appellate issues.
            In her sixth appellate issue, Clark complains the court abused its discretion by failing to
name her the boys’ primary caretaker. If a child receives or qualifies for assistance under
Chapter 31 or 32 or Title 4 or 5 of the Human Resources Code, at the request of either party, the
court shall designate a parent as the primary caretaker and the home of that parent as the primary
home of the child for the purpose of receiving public assistance on behalf of the child. If one
parent receives public assistance on behalf of the child, the court shall designate that parent as the
primary caretaking parent unless the court finds that it is in the child’s best interest to designate
the other parent. See Tex.Fam.Code Ann. § 14.021(i).



            Clark argues that she received public assistance on behalf of the boys, in that she lived in
Section 8 housing. See 42 U.S.C.A. § 1437a (West 1994 & Supp. 2000). Thus, she contends the
trial court should have named her primary caretaker and named her home as the boys’ primary
home.
            Under Section 14.021(i) of the Family Code, the trial court must designate a parent as
primary caretaker and the home of that parent as the primary home of the child for the purpose of
receiving public assistance on behalf of the child at the request of either party. Clark has not
shown in the record that she asked the court to be named primary caretaker or asked that her
home be named primary home for the boys. Clark did not comply with Section 14.021(i) and
thus did not trigger the court’s duty to designate a primary caretaker. The trial court did not
abuse its discretion in failing to designate Clark primary caretaker or to designate her home as the
boys’ primary home. Even if we were to assume Clark had asked the court to designate her as
primary caretaker, the trial court would not have abused its discretion in failing to do so.
            Section 14.021(i) deals with assigning responsibility for child care when a parent is
receiving public assistance. Here, Clark was at the time of the divorce receiving some public
assistance. The court found she was making or was capable of making $955 gross income. 
Glenn Funk, on the other hand, testified he had an annual salary of $63,000. His parents, John
and Dorothy Funk, were living with their son and were assisting in child care. The evidence
showed that Matthew had significant disabilities and needed special care. The trial court would
not have abused its discretion in designating Glenn Funk and his parents the boys’ primary
caretakers. We overrule Clark’s sixth appellate issue.
            In her seventh appellate issue, Clark complains the trial court abused its discretion in
finding that she was capable of making $955 a month gross income and in ordering her to pay
child support of $44 a week, $176 a month.
            Clark advances three arguments. First, she maintains the evidence shows the court
should have named her sole managing conservator and ordered Glenn Funk to pay child support. 
Second, that the trial court failed to set out the statutory findings in regard to setting child
support. And, third, that the trial evidence rebutted the presumption that the statutory child-support guidelines were in the best interest of the children.
            We will not disturb a court’s child support order unless the complaining party shows the
order constituted a clear abuse of discretion. See Worford v. Stamper, 801 S.W.2d 108, 109
(Tex. 1990). The court has the authority to order either parent or both parents to pay child
support. See Tex.Fam.Code Ann. § 14.05(a).



            Clark argues that the trial court abused its discretion by not naming her sole managing
conservator and by not ordering Glenn Funk to pay child support. In this section, she makes no
new arguments but incorporates by reference the arguments made in the preceding appellate
complaints. The trial court did not abuse its discretion in its conservatorship orders and did not
abuse its discretion in requiring Clark to pay child support.
            She further argues the trial court failed to set out the statutory findings in regard to setting
child support. Tex.Fam.Code Ann. § 14.057(a), (b).



            Generally, under Section 14.057(a), when a court sets child support, where support is
contested, on written request made or filed with the court not later than ten days after the date of
the hearing or an oral request made in open court during the hearing the court shall state the
following:
            (1)       the amount of net resources available to the obligor per month is $______;
            (2)       the amount of net resources available to the obligee per month is $ ______;
            (3)       the amount of child support payments per month that is computed if Section
14.055, Family Code [Guidelines: Amount Ordered], is applied is $ _______;
            (4)       the percentage applied to the obligor’s net resources for child support by the
actual order rendered by the court is ______ %; and if applicable,
            (5)       the specific reasons that the amount of support per month ordered by the court
varies from the amount computed by applying the percentage guidelines pursuant
to Section 14.055, Family Code, are: ________.

            Under Section 14.057(b), when court-ordered child support varies from the amount
computed by applying the percentage guidelines contained in Section 14.055 of the code, the
court shall find that the application of the child support guidelines would be unjust or
inappropriate and shall state the following in the child support order:
            (1)       the amount of net resources available to the obligor per month is $_____;
            (2)       the amount of net resources available to the obligee per month is $_____;
            (3)       the amount of child support payments per month that is computed if Section
14.055, Family Code, is applied is $_______;
            (4)       the percentage applied to the obligor’s net resources for child support by the
actual order rendered by the court is _________%; and
            (5)       the specific reasons that the amount of support per month ordered by the court
varies from the amount computed by applying the percentage guidelines pursuant
to Section 14.055, Family Code, are: ___________.

            Clark filed a general request for findings of fact and conclusions of law pursuant to Rule
297 of the Rules of Civil Procedure which did not address any particular issue in the case. 
Pursuant to this request, the trial court made findings of fact that included the finding that Clark
had the ability to earn $955 in gross income per month, resulting in $762.67 in net resources. 
The trial court claimed it was applying a child support rate of 25 percent, and ordered Clark to
pay $44 a week in child support.



            We believe Clark has waived any complaint as to the order requiring her to pay child
support because she never filed a request with the trial court pursuant to Section 14.057(a) of the
Family Code, or a request for additional findings of fact and conclusions of law concerning the
support issue pursuant to Rule 298 of the Rules of Civil Procedure.


 Although Section
14.057(a) specifically provides that a party may file a request with the trial court without regard
to Rules 296 through 299 of the Rules of Civil Procedure, Clark could have also utilized the
Rules of Civil Procedure to require the trial court to set out its findings regarding child support. 
See Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996). Because she utilized neither procedure,
she has waived the complaint upon appeal.
            Clark also complains the trial evidence rebutted the presumption that the statutory child-support guidelines were in the best interest of the children. Courts presume that child support
payments that follow the statutory guidelines are reasonable. A party may rebut that
presumption. See Tex.Fam.Code Ann. § 14.05(j).



            In applying the guidelines for child support, the trial court shall be guided by the
guidelines. The court may, however, in rendering its final determination of the support amount,
set the amount of child support either within or outside the range recommended in Section
14.055 of the code if relevant factors other than the guidelines justify a variance. See
Tex.Fam.Code Ann. § 14.054.


 
            In making its determination, under Section 14.054, the court shall consider all relevant
factors, including but not limited to the amount of the obligee’s net resources; the age and needs
of the child; child care expenses incurred by either party in order to maintain gainful
employment; whether either party has the managing conservatorship or actual physical custody of
another child; the amount of child support actually and currently being paid or received by either
party under another child support order; the expenses for a son or daughter for education beyond
secondary school; whether the obligor or obligee has an automobile, housing, or other benefits
furnished by his or her employer, another person, or a business entity; the amount of other
deductions from the wage or salary income and from other compensation for personal services of
the parties; provision for health care insurance and payment of uninsured medical expenses;
special or extraordinary educational, health care, or other expenses or the parties or of the child;
positive or negative cash flow from any real or personal property and assets, including a business
and investments; debt or debt service assumed by either party; and any other reason or reasons
consistent with the best interest of the child, taking into consideration the circumstances of the
parents.
            Clark argues, citing post-1995 Family Code Section 154.123(b), the court must consider
these enumerated factors when deciding whether ordering support under the statutory guidelines
would be unjust or inappropriate under the circumstances. Clark advances three arguments that
she claims rebut the presumption that the support ordered was appropriate. 
            First, she argues that under Section 154.123(b)(4), that trial court must consider that
amount of time, access to, and possession of the children. She argues that she is scheduled to
have possession of the boys between twelve and fifteen days each month and that forcing her to
pay some $176 a month in support will allow her only to provide bare necessities to the boys
during those times the boys are with her. There is no exact equivalent to this section in the pre-1995 Family Code, but Subsection 4 of Section 14.054 states that the trial court shall consider
whether either party has the managing conservatorship or actual physical custody of the child.


 
Clark fails to support her assertion that the boys will only be afforded the bare necessities when
they are with her with any other evidence or information.
            Second, Clark argues the court is to consider the ability of the parents to contribute to the
children’s support. See Tex.Fam.Code Ann. § 154.123(b)(2). This provision is equivalent to
former Section 14.052(b)(2) of the Family Code.


 Clark’s argument centers on Glenn Funk’s
ability to provide for the children. In her brief, she claims that Glenn Funk testified that when he
was sole support for the family of five, after paying all expenditures, he had about $600 a month
left from his paycheck. She does not indicate where in the record this testimony may be found,
and we have not located the testimony in the record. After the divorce, she argues Glenn Funk’s
expenses will be reduced by two-fifths, accounting for Clark and Clark’s daughter, without a
reduction in his income. Moreover, the decree ordered Clark to take the debt on the
community’s Nissan and Dodge Caravan automobiles. Clark fails to explain why Glenn Funk’s
apparently more ample resources should negate her obligation to pay child support. 
            Third, Clark contends the court was to consider child care expenses in determining child
support. See Tex.Fam.Code Ann. § 154.123(b)(6). This provision was also in the pre-1995
Family Code, in Section 14.054(3).


 Glenn Funk’s parents, both retired, live with their son and
provide transportation and child care at no cost to their son. Clark argues that because Funk is
not paying for child care, she should not be obligated to pay any support for the care of her sons. 
            The court set Clark’s support obligation within applicable statutory guidelines. See
Tex.Fam.Code Ann. § 14.055(b).


 Matthew’s developmental problems require therapy and
constant attention. Clark has not provided any evidence or argument to support her contention
that the trial abused its discretion in ordering her to pay child support. Her contentions that
Glenn Funk’s more favorable financial situation should negate her obligation to provide support
for her children are not supported by the record. Glenn Funk supports himself and the two boys
on a gross salary of $63,000 a year. He must provide a residence for the children, and
presumably provides for most of the children’s material needs. Matthew is developmentally
disabled, requires therapy, and will presumably continue to require therapy and support for most
of his life. Clark has not rebutted the presumption that the statutory guidelines are unreasonable. 
Nor has she shown the trial court’s support decision was not in the boys’ best interest. We
overrule Clark’s seventh appellate issue and affirm the judgment of the trial court.



August 24, 2000
                                                                        DAVID WELLINGTON CHEW, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)